CINCINNATI INSURANCE COMPANY, APPELLANT, ET AL., *v.* CPS
HOLDINGS, INC., D.B.A. IQ SOLUTIONS, ET AL., APPELLEES.

[Cite as *Cincinnati Ins. Co. v. CPS Holdings,*
*Inc.,* 115 Ohio St.3d 306, 2007-Ohio-4917.]

(No. 2006–0722—Submitted May 22, 2007—Decided September 27, 2007.)

LANZINGER, J.

{¶ 1} We accepted this discretionary appeal to clarify the interpretation of language within an umbrella insurance policy. We reverse the court of appeals because an insurer has no duty to defend when there is no applicable "underlying insurance."

Case Background

{¶ 2} In late 2003, appellee Ohio Department of Administrative Services ("DAS") sued appellees CPS Holding Company, Ltd., and IQ Solutions, L.L.C. (collectively, "CPS"), in the Franklin County Court of Common Pleas. The complaint alleged that CPS, as a third-party administrator of a program to procure natural gas, had mismanaged state funds and failed to pay the natural gas suppliers pursuant to contract. Nine causes of action were set forth, including negligence, professional negligence, breach of implied warranty, breach of contract, breach of express warranty, conversion, unjust enrichment, recovery of public funds under R.C. 117.28, and piercing of the corporate veil.

{¶ 3} CPS requested that appellant, Cincinnati Insurance Company, as well as other insurance companies, provide a defense. Cincinnati Insurance had issued two policies to CPS: a common policy and a commercial umbrella liability policy. After declining coverage, Cincinnati Insurance filed a declaratory judgment action against CPS in the Cuyahoga County Common Pleas Court to determine its duty to defend. DAS was added later as a party. Cincinnati Insurance filed a motion for summary judgment, and the trial court granted judgment in its favor.

{¶ 4} On appeal, CPS abandoned any claim under Cincinnati Insurance's common policy but continued to argue that the insurer had a duty to defend under its umbrella policy because Gulf Underwriters Insurance Company's Specialty Errors & Omissions Liability Insurance Policy ("E & O policy")

potentially provided coverage for CPS in the Franklin County lawsuit. The Eighth District Court of Appeals concluded that the claims against CPS fell within the scope of Gulf's duty to defend. The court of appeals then held that the clause "insurance available to the insured under all other insurance policies applicable to the 'occurrence,'" as used in Cincinnati Insurance's umbrella policy, was ambiguous. *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 8th Dist. Nos. 85967 and 85969, 2006-Ohio-713, 2006 WL 368054, ¶ 26. The court then construed this language liberally in favor of the insured to cover Gulf's E & O policy as "underlying insurance." Id. ¶ 26–27. We accepted Cincinnati Insurance's discretionary appeal.

### Contract Principles

{¶ 5} "An umbrella policy is a policy which provides excess coverage beyond an insured's primary policies." *Midwestern Indemn. Co. v. Craig* (1995), 106 Ohio App.3d 158, 164, 665 N.E.2d 712. See, also, *Cleveland Builders Supply Co. v. Farmers Ins. Group of Cos.* (1995), 102 Ohio App.3d 708, 657 N.E.2d 851. Umbrella policies are different from standard excess insurance policies, since they provide both excess coverage ("vertical coverage") and primary coverage ("horizontal coverage"). *Am. Special Risk Ins. Co. v. A–Best Prods., Inc.* (1997), 975 F.Supp. 1019, 1022. "The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to 'drop down' to provide primary coverage for situations where the underlying insurance provides no coverage at all." Id. at 1022.

{¶ 6} The duty to defend arises when a complaint alleges a claim that could be covered by the insurance policy. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 13. An insurer, however, is not obligated to defend any claim that is clearly and indisputably outside the contracted policy coverage. *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 113, 30 OBR 424, 507 N.E.2d 1118.

{¶ 7} "An insurance policy is a contract whose interpretation is a matter of law." *Sharonville*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. In *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11, we stated, "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.* (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing *Employers' Liab. Assur. Corp. v. Roehm* (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning

of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423."

{¶ 8} Ambiguity in an insurance contract is construed against the insurer and in favor of the insured. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. This rule, however, will not be applied so as to provide an unreasonable interpretation of the words of the policy. *Morfoot v. Stake* (1963), 174 Ohio St. 506, 23 O.O.2d 144, 190 N.E.2d 573, paragraph one of the syllabus.

### Application of Legal Principles

{¶ 9} With those principles in mind, we turn to the insurance policy at issue. The insuring agreement within Cincinnati Insurance's umbrella policy provides:

{¶ 10} "We will pay on behalf of the insured the 'ultimate net loss' which the insured is legally obligated to pay as damages *in excess of the 'underlying insurance'* or for an 'occurrence' covered by this policy which is either excluded or not covered by 'underlying insurance' *because of*:

{¶ 11} "1. 'Bodily injury' or 'property damage' covered by this policy occurring during the policy period and caused by an 'occurrence'; or

{¶ 12} "2. 'Personal injury' or 'advertising injury' covered by this policy committed during the policy period and caused by an 'occurrence'." (Emphasis added.)

{¶ 13} CPS asserts that, pursuant to this provision, Cincinnati Insurance must defend the Franklin County litigation.[1] DAS and CPS argue that a portion of the insuring agreement is ambiguous because it is unclear whether the two paragraphs following the words *"because of"* limit both the phrase "in excess of the 'underlying insurance'" and the clause "for an 'occurrence' covered by this policy which is either excluded or not covered by 'underlying insurance,'" or limit just the latter clause.

{¶ 14} The first question that must be addressed is whether Gulf's E & O policy qualifies as "underlying insurance." Cincinnati Insurance's umbrella policy defines "underlying insurance" as "the policies of insurance listed in the Schedule

---

1. CPS had also argued in the trial court that Cincinnati Insurance had a duty to defend because CPS had suffered an "occurrence" that was either excluded or not covered by underlying insurance. The trial court rejected this claim, and CPS did not appeal on this issue.

of Underlying Policies and the insurance available to the insured under all other insurance policies applicable to the 'occurrence'. 'Underlying insurance' also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this policy covers." The umbrella policy also provides that "occurrence" means "[a]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage'."

{¶ 15} Thus, three types of insurance policies qualify as underlying insurance: (1) any insurance policy listed in the Schedule of Underlying Insurance Policies attached to Cincinnati Insurance's policy, (2) unlisted insurance policies applicable to an "occurrence," that is, an accident that resulted in "bodily injury" or "property damage," and (3) self-insurance or alternative methods of coverage.

{¶ 16} Without referring to the definition of the term "occurrence," which is found within the policy's definition of underlying insurance, the Eighth District interpreted the clause "the insurance available to the insured under all other insurance policies applicable to the 'occurrence' " as susceptible of more than one meaning. The appellees make two arguments in support of this holding. CPS asserts that we should ignore the policy's definition of "occurrence" because the word is preceded by "the" instead of "an" and is simply a generic reference to the allegations of a complaint. DAS maintains that since the word "occurrence" refers only to an occurrence policy rather than a claims-made policy such as Gulf's E & O policy, the definition of "underlying insurance" is ambiguous.

{¶ 17} Neither argument, however, is persuasive. The policy clearly states that "words and phrases that appear in quotation marks have special meaning. Refer to Definitions (Section V)." "We have long held that a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 361, 678 N.E.2d 519. If it is reasonable to do so, we must give effect to each provision of the contract. *Expanded Metal Fire–Proofing Co. v. Noel Constr. Co.* (1913), 87 Ohio St. 428, 434, 101 N.E. 348." *Saunders v. Mortensen,* 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 16.

{¶ 18} Taking the definition of "occurrence" into consideration when interpreting the term "underlying insurance" does not create ambiguity or render the term unclear. Nor does the use of the word "occurrence" mean that claims-made policies are excluded as underlying insurance. The purpose for including the term "occurrence" within the definition of "underlying insurance" is to limit the umbrella policy's coverage to claims arising from accidents that resulted in bodily injury or property damage.

{¶ 19} The Gulf E & O policy does not fall within one of the three types of "underlying insurance" defined under Cincinnati Insurance's umbrella policy. It

is not self-insurance or listed in the Schedule of Underlying Policies. Neither is the policy an insurance policy "applicable to the 'occurrence,'" because it does not cover accidents that result in bodily injury or property damage.[2]

{¶ 20} CPS and DAS also argue that because the umbrella policy contains a special endorsement entitled "Exclusion of Designated Professional Services," which does not exclude the type of services CPS provided for DAS, CPS's alleged professional negligence is covered.[3] This endorsement, however, is not an insuring provision but rather an exclusion of claims for "bodily injury," "property damage," "personal injury," or "advertising injury" caused by certain professional services. The complaint pending in the Franklin County Court of Common Pleas does not allege these type of claims. Therefore, this policy provision is clearly inapplicable.

{¶ 21} Because Cincinnati Insurance's umbrella policy provides excess coverage for only those policies listed within its schedule or those applicable to accidents resulting in bodily injury or property damage, the Gulf E & O policy is not "underlying insurance." Cincinnati Insurance, therefore, does not have a duty to defend CPS in the Franklin County litigation. The judgment of the Cuyahoga Court of Appeals is reversed.

Judgment reversed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

---

Davis & Young, Richard M. Garner, and Dennis R. Fogarty, for appellant.

Robert P. Rutter, for appellees IQ Solutions, L.L.C., CPS Holdings, Inc., CPS Holding Company, Ltd., CPS Utilities, Linda and Robert Kendall, and NCP Limited Partnership.

Marc Dann, Attorney General, Stephen P. Carney, Deputy State Solicitor, and William J. Cole and James M. Evans, Assistant Attorneys General, for appellee Ohio Department of Administrative Services.

---

2. {¶ a} In its exclusion section, Gulf's E & O policy clearly states: "**We** are not obligated to pay **Damages** or **Claim Expenses** or defend **Claims** for or arising directly or indirectly out of:
   {¶ b} "a. **Bodily Injury** or **Property Damage**."

3. {¶ a} The endorsement states, "This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', or 'advertising injury' due to the rendering or failure to render any professional service shown in the schedule.
   {¶ b} "SCHEDULE
   {¶ c} "1. COMPUTER PROGRAMMING AND CONSULTING
   {¶ d} "2. COMPUTER MFG., COMPUTER SOFTWARE
   {¶ e} "3. ELECTRONIC DATA PROCESSING SERVICES"