**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0124n.06
Filed: February 12, 2009

**No. 08-3320**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHN E. WERNER, JR., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| PROGRESSIVE PREFERRED INSURANCE | ) | NORTHERN DISTRICT OF OHIO |
| COMPANY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: GUY, CLAY and COOK, Circuit Judges.

COOK, Circuit Judge.  John Werner sued Progressive Preferred Insurance Company ("Progressive") over the distribution of insurance benefits.  Werner claims that Progressive acted in bad faith and breached its contract with him when it paid the balance of his "MedPay" benefits to Primax Recoveries, Inc. ("Primax"),  a claimed lienholder. The district court granted summary judgment for Progressive, and we affirm.

I.

Werner contracted with Progressive to insure his motorcycle.  In addition to other coverage, his policy provided $5,000 in "MedPay" benefits:

Subject to the Limit of Liability shown on the Declarations Page, if you pay a premium for Medical Payments coverage, we will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because of bodily injury:

1.      sustained by an insured person;

2.      caused by accident; and

3.      arising out of the ownership, maintenance or use of a motor vehicle.

Any dispute as to the usual and customary charge will be resolved between us and the service provider.

Werner sustained multiple injuries in a 2002 accident. Jody Balko, a Progressive claims representative, wrote Werner to explain his coverage:

Subject to the terms of the policy, Progressive will pay up to $5,000 under the medical payments coverage for the medical bills incurred as a result of this accident. Please be advised that payment will be issued to the medical provider directly unless you notify Progressive otherwise.

. . .

Should any disputes arise with the provider as a result of this review, the provider should contact our office. Unless you are notified otherwise in writing, Progressive will deal with the provider directly regarding the disputes.

Consistent with this policy, Werner submitted his bills and Progressive paid them. In December, Balko wrote Werner's attorney, Mike Piacentino, inquiring whether Werner had any further bills. Piacentino responded that he did, but sent none.

In April 2003 Balko received two lien notices from Primax, a collector hired by Medical Mutual of Ohio (Werner's health insurer). Primax advised Balko that Medical Mutual had

subrogation rights under Werner's policy, and thus held a lien over the MedPay funds. On June 20 Balko called Piacentino to discuss the lien, but his number was disconnected. She then called Werner and advised him of the lien. The same day, Balko wrote two letters to Piacentino. The first asked if Werner had additional bills, and advised Piacentino, "[i]f I do not hear from you with [sic] 14 days, I will be closing my file." The second told him about the lien and asked for an "itemized statement before I can make consideration for this bill."

On August 7 Balko received another letter from Primax seeking payment for $5,742.16 of benefits paid to Werner by Medical Mutual. As of August 15 Balko had yet to hear from either Piacentino or Werner, so she issued Primax a check for $3,895—the MedPay balance—in satisfaction of the lien. She then sent Werner a letter explaining that he exhausted his MedPay limit and listing all the prior payments.

Months later, Piacentino wrote Balko requesting a return of the $3,895 because Medical Mutual did not have a legal lien. Progressive maintained that it properly paid Primax, and Werner sued. Styling his complaint as a putative class action, he alleged that Progressive (1) breached its contract by paying Primax, and (2) committed the tort of bad faith against him. The district court refused to certify the class and granted summary judgment for Progressive.

II.

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). The moving party must identify those parts of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If it does, the burden shifts to the party opposing summary judgment, which must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The Sixth Circuit reviews a grant of summary judgment de novo. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

A.

Werner alleges that Progressive breached the contract by paying Primax his remaining MedPay benefits. Ohio law governs the contract claim because jurisdiction arose under 28 U.S.C. § 1332. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). To avoid summary judgment, Werner must demonstrate: (1) the existence of a contract; (2) that he performed his contractual obligations; (3) that Progressive breached the contract; and (4) that he incurred damages as a result of the breach. *See Doner v. Snapp*, 649 N.E.2d 42, 44 (Ohio Ct. App. 1994). The district court found no breach because the contract unambiguously permitted Progressive to pay third parties. On appeal, Werner maintains that the court erred because the contract is ambiguous and should be construed to prohibit payments to a subrogated lienholder.

To determine whether Progressive breached, we interpret the contract to give the "words and phrases used in an insurance policy . . . their natural and commonly accepted meaning . . . ." *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1348 (Ohio 1982). If the terms are unambiguous—if they "can be given a definite legal meaning," *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 34 (Ohio 2007)—the court must enforce them. *Cincinnati Indemn. Co. v. Martin*, 710 N.E.2d 677, 679 (Ohio 1999).

The district court held that the contract unambiguously permits Progressive to pay third parties, including a subrogated lienholder. We agree. The contract is not ambiguous just because it is silent on a particular issue. *See, e.g.*, *E. Ohio Gas Co. v. City of Akron*, 90 N.E. 40, 42–43 (Ohio 1909); *but see Price v. Dillon*, 2008 Ohio 1178 at ¶52 (Ohio Ct. App. Mar. 13, 2008) (stating that direct payment to third-party insurers would breach a "MedPay" contract absent language authorizing such payment).[1] The policy's text allows Progressive to pay third parties for Werner's "reasonable and necessary" medical expenses, and Werner cannot point to any language to the contrary.

Several clauses permit Progressive to pay third parties. Under the contract, Progressive must "pay the usual and customary charge for reasonable and necessary expenses." As for who Progressive may pay, the language permits payment of "reasonable and necessary expenses" to any party. Consequently, Progressive may pay service providers and subrogated insurers alike—after

---

[1]Werner relies on *Price*, but we readily distinguish that unreasonably-delayed-payment-to-insured case from this one where Progressive expeditiously sought to pay Werner's claims and acted reasonably in its attempts to solicit his guidance regarding payment.

all, Medical Mutual simply sought reimbursement of its payment of Werner's "reasonable and necessary" expenses. Likewise, the contract provides that disputes over the "usual and customary charge will be resolved between [Progressive] and the service provider." In other words, the agreement requires Progressive to negotiate disputes with third parties itself, excluding Werner from the process. That clause suggests that Progressive may bypass Werner when paying the claim. Otherwise, after settling the dispute, Progressive would have to inform Werner of the dispute and settlement, and ask permission to pay the provider.

Read together, the "will pay" clause and the dispute-resolution clause unambiguously permit Progressive to pay third parties directly. To hold otherwise imposes a limitation on Progressive's authority not found in the contract language. *See Leigh v. Crescent Square Ltd.*, 608 N.E.2d 1166, 1168 (Ohio Ct. App. 1992) ("It is widely held that courts may not imply additional terms in a contract or agreement where none clearly exists.").

B.

Ohio law also governs Werner's tort claim that Progressive acted in bad faith by paying Primax. An insurer may be liable in tort when (1) without a lawful basis, it intentionally refuses to satisfy an insured's claim, or (2) without reasonable justification, it fails to determine whether its refusal to pay a claim had a lawful basis. *Mid-American Fire & Cas. Co. v. Broughton*, 798 N.E.2d 1109, 1115 (Ohio 2003). A court may grant summary judgment to the insurer if, after viewing the evidence in the light most favorable to the insured, it finds "that the claim was fairly debatable and

the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim." *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 605 N.E.2d 936, 943 (Ohio 1992). To withstand a motion for summary judgment, the insured must oppose the motion "with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification . . . ." *Id.*

The district court held that Werner could not prevail on his bad-faith claim because "Progressive's conduct comported with the insurance policy and, therefore, was not unlawful." In other words, Progressive could not commit the bad-faith tort because it did not breach the contract, and thus did not unlawfully deny coverage. Moreover, because Progressive did not deny the claim, it cannot be charged with failing to reasonably investigate the claim before denying coverage. Put simply, the tort claim does not apply here. Bad-faith claims are brought by insureds to challenge an insurer's denial of coverage, but here Progressive *paid* Werner's claim. Werner's objection centers on payment to the lienholder—his medical provider—rather than to him; if the lienholder wrongfully collected, Werner retains a claim against it.

Werner characterizes Progressive's actions differently. He contends that Progressive denied him coverage in the amount of $3,895 when it improperly paid that amount to Primax without a reasonable justification. But Progressive was reasonably justified. Primax twice contacted Progressive and provided documentation of the lien, and Balko twice sought to contact Werner's

attorney to no avail. Under the circumstances, Progressive was justified in paying Primax rather than unreasonably withholding or delaying payment of the claim. Moreover, it was not unreasonable to trust the documentation Primax sent. Imposing a rule prohibiting Progressive from relying on facially valid documents from trustworthy sources would cripple the claims-handling process to the detriment of policyholders. Werner insists that Balko should not have paid Primax without first investigating the lien, because she knew he had further bills to pay. But Balko asked about additional bills and received no response. In the absence of the guidance she requested from Werner, Balko followed company policy sensibly designed to efficiently serve Progressive's insureds; she paid Primax with the same promptness as the bills that Werner himself submitted.

III.

We affirm the district court's order of summary judgment in favor of Progressive.