BRUCE, Appellee,

v.

JUNGHUN, Appellant.

[Cite as *Bruce v. Junghun,* 182 Ohio App.3d 341, 2009-Ohio-2151.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–837.

Decided May 7, 2009.

342

Lane, Alton & Horst, L.L.C., Rick E. Marsh, Melissa M. Ferguson, and Jenifer A. French, for appellee.

Michael T. Irwin, for appellant.

TYACK, Judge.

{¶ 1} This is a personal-injury case arising out of a two car collision at the intersection of Hayden Run Road and State Route 33, a.k.a. Riverside Drive, in Franklin County, Ohio. On July 19, 2005, plaintiff-appellee, Linda S. Bruce, was traveling north on Riverside Drive when her vehicle collided with defendant-appellant Kim Junghun's vehicle traveling east on Hayden Run Road. Junghun was cited for failure to yield, as he had a flashing red light in his direction and Bruce had a flashing yellow light in hers. Bruce was seen at the emergency room and reported having right shoulder and back pain. Bruce followed up with her family doctor, who referred her to a board-certified orthopedic shoulder and elbow specialist, Joseph Mileti, M.D.

{¶ 2} Dr. Mileti examined Bruce, who reported persistent pain in the front and side of her shoulder. Bruce was limited in the amount she could move her shoulder because of pain. Mileti ordered an MRI (magnetic resonance imaging) test, which was performed on September 6, 2005. According to Mileti, the MRI

showed a tendonopathy: a degenerative condition of the tendon in which the tendons are not absolutely normal in nature. It can be quite common and is usually asymptomatic, but it can be aggravated with an acute injury to the area.

{¶ 3} Mileti diagnosed Bruce with rotator-cuff tendonopathy and prescribed a course of anti-inflammatory medication and physical therapy. Bruce continued with physical therapy, and at the time of her last visit to Mileti in July 2006, she was still experiencing some pain. Based on Bruce's history of no shoulder pain prior to the accident and the development of pain after the accident, Mileti opined that, to a reasonable degree of medical certainty, the cause of the inflammation was the car accident.

{¶ 4} The issue of liability was disposed of by means of a motion for partial summary judgment, and the case proceeded to trial with proximate cause and damages being the only issues for the jury. Junghun failed to appear for trial and did not participate in this appeal. His insurer, Allstate Indemnity Company, defended the case and initiated this appeal. These facts form the basis for Bruce's motion to dismiss this appeal.

{¶ 5} Prior to trial, Bruce identified her expert as Mileti. Mileti testified by means of a video deposition. Out of the hearing of the jury, Bruce objected to a portion of the cross-examination of Mileti, and the trial court sustained the objection striking a portion of the testimony. The trial court also allowed Bruce, a retired nurse, to testify as to her understanding of the nature of her injury. Counsel for Junghun objected to Bruce's testimony, contending that she was testifying as a medical expert when she was never identified as such. The trial court overruled the objection. These objections form the basis for this appeal.

{¶ 6} The jury returned a unanimous verdict for Bruce, awarding her $56,125.92 in damages.

{¶ 7} On appeal, Junghun raises three assignments of error:

I. The trial court erred in excluding Dr. Mileti's testimony regarding the possible causation of Plaintiff's injuries.

II. The trial court erred in permitting Plaintiff to testify as a medical expert on her own behalf.

III. The trial court erred in permitting the verdict to stand as the verdict was against the manifest weight of the evidence.

{¶ 8} Additionally, Bruce has filed a motion to dismiss this appeal. Bruce filed a motion to dismiss this appeal for the reason that Junghun did not appear at trial and could not be located by his counsel after trial and, therefore, could not have consented to the appeal filed in this action. Bruce argues that a nonparty, Allstate Indemnity Company ("Allstate"), directed that this appeal be taken, and that Allstate lacks standing as a party to pursue the appeal. Bruce claims that

Allstate must make a showing that Junghun elected not to appeal before the right-to-appeal provision in the policy is triggered. According to Bruce, the right-to-appeal provision in the policy does not become effective under circumstances such as these where the insured expresses no intent regarding appeal.

{¶ 9} Allstate counters that it is required to defend any action against Junghun that is within the coverage of the policy. In addition, Allstate states that there is no limit to the duty to defend and that the duty extends to the appellate process.

{¶ 10} Under the "General Statement of Coverage" provision, the contract of insurance provides:

> We will defend an insured person sued as a result of a covered accident involving an insured auto. We will choose the counsel. We may settle any claim or suit if we believe it is proper.

{¶ 11} Under the section entitled "Our Right to Appeal," the policy states:

> If an insured person or any other insurer elects not to appeal a judgment, we may do so. We will pay the reasonable costs and interest incidental to the appeal.

{¶ 12} In *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, at ¶ 7, the Supreme Court of Ohio reiterated a number of contract principles applicable to insurance policies. When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. Id. Courts examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. Id. Courts look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. Id. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id.

{¶ 13} Bearing these principles in mind, we must examine the policy language at issue.

{¶ 14} The language of the policy requires Allstate to defend the insured person. The duty to defend has been held to be an integral and valuable part of the contract. It is a valuable right of the insurer to be able to control the defense of actions in which the insurer may be required to pay the judgment. *Liberty Mut. Ins. Co. v. Allstate Ins. Co.* (Apr. 25, 1984), 9th Dist. No. 11275, 1984 WL 6131. The duty to defend does not automatically cease when the trial court enters judgment. See *Great Am. Ins. Co. v. Hartford Ins. Co.* (Dec. 28, 1990), 11th Dist. No. 89–L–14–177, 1990 WL 222993. The intent of the policy language is two-fold. It requires Allstate to defend, and it gives Allstate the right to pursue an appeal if it believes it is warranted. We do not read the

contract as saying that Allstate must pursue an appeal if the insured wishes to do so. (It retains the right to settle.) Nor does the policy preclude an appeal if the insured has not explicitly elected not to appeal. Junghun's absence from the proceedings can be construed as an implied or constructive rejection of the right to appeal. Under that scenario, Allstate has reserved to itself the right to appeal a judgment. The motion to dismiss is denied.

{¶ 15} We turn to the merits of the appeal.

■■ {¶ 16} In his first assignment of error, Junghun argues that the trial court committed reversible error in excluding the following testimony of Mileti:

Q. Okay. Would it be fair, Dr. Mileti, to say that you cannot rule out the Plaintiff's age and level of activity as a reason for this aggravation of her right shoulder because of this degeneration that she had prior to the accident?

A. I certainly can't rule it out, but I can—the aggravation—there is two separate conditions. There is the chronic degenerative portion which you're talking about, which, yeah, you're right, it is a chronic condition. The accident did not cause her tendonopathy, but certainly cause—well, I say certainly. I believe it caused the inflammation and the irritation and aggravation of that condition.

Q. Okay. Would you expect frequent use of a right shoulder tendonopathy to have equal or similar symptoms to the ones that the Plaintiff was complaining about?

A. If that frequent use would have caused an irritation of the shoulder, certainly it could, yes.

{¶ 17} In sustaining the objection, the trial court stated: "If you're going to ask the doctor for an opinion, you have to phrase it appropriate [sic] with an opinion on cross-examination."

{¶ 18} Junghun argues that his inquiry was permissible on cross-examination to cast doubt on Mileti's credibility as it points to the possibility that the doctor may not have considered the frequency of Bruce's use of the injured shoulder. Junghun also states that excluding the testimony was highly prejudicial as it completely undercut the defense theory of alternative causation. Although case law supports appellant's position that cross-examination may use "possibility" evidence to "chip away" the plaintiff's case, *Conti v. Topolosky* (June 17, 1975), 10th Dist. No. 74AP–515, 1975 WL 181450, the appellant made clear in his brief that was not the purpose for which he intended to use the evidence.

■■ {¶ 19} The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Robb* (2000), 88 Ohio St.3d 59, 68, 723 N.E.2d 1019. Absent an abuse of discretion and material prejudice to appellant,

an appellate court will not disturb a trial court's ruling as to the admissibility of evidence, including expert scientific evidence. *Gen. Elec. Co. v. Joiner* (1997), 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508; *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 483 N.E.2d 1157. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

{¶ 20} The standard for the admissibility of expert testimony as it relates to proximate cause was set forth in *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus:

> The admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability. An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue. Inasmuch as the expression of probability is a condition precedent to the admissibility of expert opinion regarding causation, it relates to the competence of the evidence and not its weight. Consequently, expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue.

(Citations omitted.)

{¶ 21} Taking the defense theory at face value, there was no abuse of discretion in striking the testimony because the defense was attempting to use the plaintiff's expert to express an opinion on an alternative-cause theory. Under *Stinson*, the opinion had to be expressed in terms of probability. Here, defense counsel phrased his question in terms of whether Bruce's age and activity level could be ruled out as the cause of the aggravation. The follow-up question and response were problematic as well because they presumed the frequent use to have caused an irritation of the shoulder. This called for speculation on the part of Mileti.

{¶ 22} Junghun also points to the doctor's earlier testimony in which he agreed to express all of his opinions on the basis of a reasonable degree of medical probability. Despite the earlier testimony, the question as phrased by the defense was asking Mileti to give an opinion based on possibility, not probability, and could not be used as an expert opinion to support an alternative-causation theory. There was evidence in the record that Bruce was physically active before the accident and that prior to the accident, she had had no trauma, no injury, no problems, and no symptoms with her shoulder or any of her joints. Therefore, although the possibility that the doctor may have overlooked a potential cause of Bruce's injury was a permissible line of questioning for cross-examination, the

probative value of such testimony is sharply outweighed by the speculative nature of the testimony. The prejudicial effect of potentially misleading the jury outweighed any potential probative value. See Evid.R. 403(A).

{¶ 23} In *McWreath v. Ross*, 179 Ohio App.3d 227, 2008-Ohio-5855, 901 N.E.2d 289, the plaintiff experienced neck pain after a 2005 automobile accident. He had been in two prior automobile accidents in 1990 and 1992. The case went to trial with liability established, and the remaining issues of proximate cause and damages were tried to a jury. In a videotaped deposition, the plaintiff's neck surgeon testified that the automobile accident was the proximate cause of the plaintiff's herniated disc that he surgically repaired. The surgeon had also removed two adjoining discs that had degenerated due to the "wear and tear of life." The surgeon testified that the whiplash injury from plaintiff's automobile accident aggravated the preexisting processes in the neck.

{¶ 24} On cross-examination, the defense asked if it were possible that the herniated disc was in the plaintiff's neck before the accident. Over objection, the surgeon testified that it was possible. In its case-in-chief, the defense presented no expert medical testimony.

{¶ 25} The jury returned a zero verdict, and the trial court granted a new trial. The court of appeals stated:

> Once a prima facie case has been demonstrated, and adverse party may attempt to negate its effect in various ways. She may cross-examine the expert of the other party; she may adduce testimony from another expert that contradicts the testimony of the expert for her adversary; further, she may adduce expert testimony that sets forth an alternative explanation for the circumstances at issue.

Id. at ¶ 79.

{¶ 26} The defense did not present any medical evidence to contradict the plaintiff's expert, but relied upon cross-examination of the surgeon attempting to show that the plaintiff's disc herniation was caused by a preexisting degenerative condition of the disc and not by the accident. However, the only testimony the defense was able to elicit was that herniation of discs could occur due to degeneration as well as trauma and that it was possible that the disc herniation was the result of degeneration.

{¶ 27} The court of appeals found that by asking whether the herniation could have been preexisting in terms of possibility instead of probability, the cross-examination failed to reveal any contradictions, repudiations, or inconsistencies in the surgeon's opinion that the herniated disc was caused by the accident. Moreover, the testimony did not even meet the standard of admissibility required for expert testimony setting forth an alternative explanation. Id. at ¶ 84.

{¶ 28} In this case, the defense sought to introduce evidence of an alternative causation for Bruce's shoulder injury by cross-examining Bruce's expert. The passage that was stricken did not meet the standard of admissibility for expert opinion. In order for the doctor to answer the question whether frequent use of a right shoulder tendonopathy could cause symptoms similar to those Bruce experienced, the doctor had to presume the frequent use caused an irritation to the shoulder. This begs the question of what caused the irritation or aggravation, and would likely lead to jury confusion.

{¶ 29} Having found no abuse of discretion, the first assignment of error is overruled.

{¶ 30} In the second assignment of error, appellant's counsel argues that the trial court committed reversible error in allowing Bruce to testify as a medical expert. Bruce was never identified as an expert or qualified as such. She was not asked for her diagnosis of herself or her medical opinion on direct examination. She did relate what she discussed with Mileti and, based on that discussion, she provided her understanding of what was wrong with her shoulder. Bruce related that she had "classic impingement syndrome," and over objection was allowed to explain to the jury some of the physiology of the shoulder and her understanding of what impingement was.

{¶ 31} Bruce did not testify as a medical expert, but rather as a lay witness providing an opinion. A retired nurse, Bruce's opinion was based upon her own experiences, observations, discussions with her treating physician, and the reports of her medical tests. The testimony was in accord with Evid.R. 701, which states, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 32} Therefore, the second assignment of error is overruled.

{¶ 33} In his third assignment of error, Junghun claims that the jury verdict was excessive and not supported by the manifest weight of the evidence.

{¶ 34} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. A reviewing court must not substitute its judgment for that of the trial court where there exists some competent, credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742.

{¶ 35} Here, the jury heard evidence of Bruce's medical expenses, the pain she experienced at the time of the accident and thereafter, and the limitations she had to put on her formerly active lifestyle because her range of motion is now limited by pain. There existed competent, credible evidence to support the jury award. The third assignment of error is overruled.

{¶ 36} Based on the foregoing, we deny the motion to dismiss, and overrule appellant's three assignments of error. The judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BROWN, J., concurs separately.

MCGRATH, J., dissents.

BROWN, Judge, concurring separately.

{¶ 37} While I concur in the disposition of the second and third assignments of error, I write separately to address the first assignment of error, which raises the issue whether the trial court erred in excluding Mileti's testimony on cross-examination as to possible causation.

{¶ 38} Cross-examination can serve several purposes. It may show that a witness should not be believed. See *Dorsey v. Parke* (C.A.6, 1989), 872 F.2d 163, 167 (noting that a primary purpose of cross-examination is to challenge whether a witness was sincerely telling what he or she believed to be the truth). Cross-examination may also be used to allow the admission of "facts which support a theory contrary to the one advanced by [the opposing side]." *McGowan v. Goodyear Tire & Rubber Co.* (Apr. 15, 1982), 4th Dist. No. 443, 1982 WL 3422. Destructive cross-examination is designed to attack the credibility of the witness. On the other hand, constructive cross-examination is designed to secure concessions from the witness to be used to support or prove alternative theories or explanations for certain events.

{¶ 39} While each type of cross-examination is an important tool, and is critical to leading a jury to the truth, how a party can use information elicited during cross-examination is a separate matter. For instance, evidence elicited during cross-examination may be admissible for impeaching the credibility of a witness but insufficient to support a questioner's theory of the case. Likewise, evidence elicited on cross-examination may, without more, provide a sufficient legal basis to support or prove an alternative theory or explanation. Proper jury instructions and arguments of counsel can fairly insure that juries do not use evidence for an improper purpose. See, e.g., *Barnett v. Sexten*, 10th Dist. No. 05AP–871, 2006-Ohio-2271, 2006 WL 1230676, ¶ 14 ("Where evidence is admitted for one purpose but inadmissible for other purposes, the risk that the evidence will be

used for its improper purpose can generally be cured by a limiting instruction explaining the proper use of such evidence"). Thus, if requested, a proper jury instruction would highlight the distinction, noted above, by informing jurors that such testimony may be considered (1) only for impeachment purposes, (2) as admissible to prove an alternative theory or explanation for the circumstances at issue, or (3) as corroboration of an established or subsequently established competent alternative theory.

{¶ 40} If an expert witness concedes that the position advanced by the questioner is more likely than not to be true, then the answer may be used as substantive evidence. On the other hand, if the expert concedes only that the position could, but is not likely to occur, such evidence would be insufficient to support an argument that the position occurred. In the case of *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, the Supreme Court of Ohio addressed the competence of testimony in support of an alternative theory or explanation for the circumstances at issue regardless of whether such testimony was advanced by the plaintiff or defendant or elicited on direct or cross-examination of any witness. The ruling of *Stinson* has been cited as a basis for unduly restricting cross-examination of experts. I believe *Stinson* does not preclude or necessarily limit cross-examination when the purpose of the cross-examination is to attack the credibility of the testifying witness or to attack the testimony of another witness or other evidence. Such "destructive cross-examination" is not necessarily limited by *Stinson*, as *Stinson* addresses only the threshold for the admissibility of constructive cross-examination to prove an alternative theory.

{¶ 41} The analysis, thus, first begins by determining whether the cross-examination is constructive or destructive. If the elicited testimony is constructive cross-examination to support an alternative theory or explanation for circumstances at issue in the case, then the court should apply the standards set forth in *Stinson* and require a more-probable-than-not threshold before permitting admission. A secondary analysis would then be utilized to determine whether the cross-examination, even though incompetent under *Stinson*, is admissible to (1) impeach the witness' credibility, (2) impeach the testimony of another witness' credibility or other evidence, or (3) provide some corroboration to another expert's testimony that did establish the position to a reasonable degree of probability. The evidence elicited on cross-examination thus may be admissible, if relevant, for these limited purposes. A "not probable concession" could support an argument that attacks or affects the credibility of an expert witness or adds some corroboration to a proponent's expert witness's contrary position.

{¶ 42} In the instant case, Mileti, the only testifying physician, conceded on cross-examination that paddling a kayak could be a cause of appellee's injury, but

further opined that it was not probable. Such testimony would be insufficient to argue to the jury that kayaking caused injury to appellee. The trial court properly excluded such testimony on the basis of being incompetent to support an alternative theory or explanation for appellee's injury. The next question to be addressed is whether the destructive cross-examination is admissible to (1) attack the credibility of the witness, (2) attack the credibility of another witness, or (3) provide corroboration to a competent, alternative explanation. Since appellant did not provide competent evidence for the alternative explanation in his case-in-chief, the concessions of Mileti are not relevant to corroborate such explanation, as none was advanced by appellant. Likewise, such testimony or concession was not inconsistent with other witnesses called by either party, since no other experts testified at trial. The only remaining issue for the court to address is whether the concessions, although "not probable," are relevant to attack the credibility of Mileti. The concession that kayaking could be a causative factor if appellee had experienced pain after kayaking could arguably be used by appellant to argue that Mileti did not consider all of the relevant factors and that the basis of his opinion may be flawed, thus affecting his credibility. Appellant could argue that the jury should simply not believe Mileti's testimony. The jury should be able to know if the physician considered whether kayaking could, under certain circumstances, cause this type of injury, i.e., a denial might call into question his credibility, while a concession might call into question whether he has evaluated all the history. Thus, I conclude that the trial court erred in sustaining the objection to appellant's question.

{¶ 43} I find, however, the exclusion of the testimony at issue to be harmless under the facts of this case. Part of the excluded expert's testimony included counsel's question whether age and level of activity could be a cause of the degeneration appellee suffered prior to the accident. In response, the physician stated he could not rule it out. In his deposition, however, the physician admitted that degeneration occurs over time, and, therefore, the excluded testimony was nothing more than a rehash of what the physician had already testified about. The physician explained, in the objected-to answer, that the degeneration is a chronic condition and that the accident caused an irritation and aggravation of that condition.

{¶ 44} Further, the expert's concession on cross-examination was conditional upon appellee experiencing similar symptoms while kayaking, but there was no evidence in the record that appellee had experienced pain in her shoulder after kayaking. In the absence of such evidence, the testimony is not relevant as it does not make a fact more or less probable than it would have been without that evidence. Evid.R. 401. Because Mileti's opinion was conditional upon appellee

having experienced similar symptoms while kayaking, a fact never established, the exclusion of the evidence was clearly harmless error.

{¶ 45} Accordingly, I concur with the disposition of the first assignment of error on the basis that the exclusion of the subject testimony constituted harmless error.

McGrath, Judge, dissenting.

{¶ 46} Being unable to agree with the majority opinion's or the concurring opinion's disposition of the first and second assignments of error, I respectfully dissent.

{¶ 47} As to the first assignment of error, while I agree with the concurring opinion that error occurred, I disagree that the error was "harmless." At issue here is a one-doctor-witness personal-injury case. The defense did not call its own expert to prove an alternative cause and was cross-examining the plaintiff's doctor as to the soundness and credibility of his opinion of causation. Cross-examination is the accepted method to test the soundness of the expert's opinion and to require an answer as to why and how the expert came to the conclusion that the accident was the probable cause of plaintiff's injury over and above other possible causes. In the majority's view, once an expert espouses a probable cause, the defense may not even ask the witness if he considered and rejected other possible causes or even acknowledged that other possible causes exist.

{¶ 48} In this case, there is evidence in the form of testimony from the plaintiff, and to some extent, her doctor, that the plaintiff had been and continues to be a very physically active person engaging in physical conditioning, which includes rollerblading, kayaking, and weightlifting. Plaintiff's doctor even acknowledges these activities as strenuous and would not rule out kayaking as the type of activity which could aggravate the preexisting shoulder tendonopathy. Moreover, the excluded testimony reveals not only did the plaintiff's doctor not rule out the plaintiff's physical activity as being a possible aggravating factor, but ultimately he decided it was not the more probable cause, due to the plaintiff's own history of not reporting the activity as causing pain. Thus, we have a situation where Mileti's "probable" causation opinion rests entirely on the medical history provided to him by the plaintiff. This raises an issue with respect to the strength and credibility of his opinion, which is linked 100 percent to the credibility of a heavily interested party in reporting symptoms. The jury did not get to consider any of this in weighing the strength of Mileti's ultimate opinion. All this in a case where the plaintiff is reporting a pain level of two on a ten scale, and evidently kayaking during some of the time period of physical therapy (i.e., kayaking in May and the final visit with Mileti being in July).

{¶ 49} The only reason to exclude questions to a plaintiff's doctor on cross-examination as to how other activities were excluded as causes would be if there were no evidence in the case that the plaintiff engaged in those activities. But that is not the case here where plaintiff, her sister, and even Mileti testified to these very strenuous activities. The doctor was not made to tell the jury what was ruled out and why—only what was ruled in. So how does a jury weigh the strength and credibility of that opinion?

{¶ 50} Under these circumstances, the trial court's denial of the basic right of cross-examination to test the credibility of both the plaintiff and her doctor's opinion with respect to her claimed medical injury was not only error but error that was far from harmless. Where it turns out that the doctor's opinion on causation versus unrelated causative factors rests solely on the reporting history of the plaintiff to her doctor, then the jury must be able to weigh everyone's credibility. But here the jury did not get that chance and, thus, the defendant did not get a fair consideration of the issue.

{¶ 51} Both the majority opinion and the concurring opinion cite *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, as setting forth the law of Ohio governing this matter. However, a review of *Stinson* reveals that that case actually permitted testimony by a *defense medical expert to support an alternative theory of causation*, which was stated in something less than a "reasonable probability." In *Stinson*, the opinion included a discussion of three possible causes, including the plaintiff's expert's theory and the conclusion that the defense theory was the *more possible*. The Ohio Supreme Court reasoned that since the competing experts' opinions included the plaintiff's expert theory as to a "possible" cause, it was proper to testify to having compared the two possibilities in finding one "more possible" than the other.

{¶ 52} In the case at bar, we have a situation in which the barred questions are asked *of only the plaintiff's expert*, which certainly includes the plaintiff's theory of causation within a reasonable degree of medical probability but is also the plaintiff's expert's explanation of how he arrived there. If one cannot question how the expert arrived at his conclusion, then it is difficult to see how one can test that conclusion through cross-examination.

{¶ 53} Giving the aforesaid, I would conclude the trial court's exclusion of the defense cross-examination questions to be error, and because the jury was therefore unable to weigh the plaintiff's or her doctor's credibility against the opinion, I would further conclude that the error was not harmless.

{¶ 54} As to the second assignment of error, the plaintiff's medical expert (her treating physician who is a board-certified orthopedic surgeon) rendered an opinion that the only condition suffered by the plaintiff attributed to the accident in this case was an inflammation or aggravation of a preexisting shoulder

situation known as rotator tendonopathy. The plaintiff had 20 physical therapy sessions and was released in a year. Plaintiff's doctor ruled out a rotator-cuff tear and, although he recognized that the plaintiff had some impingement-like symptoms, he did not conclude that she had a shoulder impingement or a condition known as bursitis.

{¶ 55} Plaintiff, who was an anesthesiology registered nurse for 20 years, testified as to her medical condition. The defense objected to the plaintiff's testifying as an expert, to which plaintiff's counsel argued: "She is a medical expert. She's got extensive training in that and she's certainly qualified to tell us what impingement syndrome is. She testified she had impingement syndrome symptoms, and I asked her what is that?"

{¶ 56} Therefore, plaintiff was offering herself as a medical expert in this case. Over objection, she testified that the accident caused her to suffer a classic impingement syndrome and went on to explain precisely and in great medical detail what that entailed. Plaintiff also added that she suffered from a bursitis condition and likewise described in great detail what that included.

{¶ 57} The trial court simply overruled the objection without explanation, did not rule on the plaintiff's qualification (or lack thereof), and allowed her to testify as an expert medical witness. Moreover, plaintiff not only testified in detail as if she were an orthopedically trained expert, but she also contradicted her own doctor, introduced an "impingement" and a "bursitis" condition into the case, and said both conditions were supported by the MRI. Thus, plaintiff is testifying as an orthopedic and radiology expert medical witness though she was never listed as an expert on the plaintiff's witness list, would certainly not be qualified as to these specialties based only on being an anesthesiology registered nurse, and is the only medical support for additional "related" conditions, neither of which is supported by her doctor.

{¶ 58} I am not unmindful of the fact that a plaintiff may testify as to his or her pain and suffering and medical treatments. However, he or she may not, simply because he or she is a plaintiff, become specialized medical experts able to testify to the diagnosis and causation in specific medical specialties. Without specific qualification of an expert medical witness, plaintiff's testimony is clearly in violation of Evid.R. 702.

{¶ 59} This error also is not harmless error as it is unknown what made up the jury's thinking with respect to plaintiff's injury when the jury found the damages to be over $50,000 in a case involving less than $7,000 in special damages. For example, did the jury consider an impingement syndrome and a bursitis condition in addition to an aggravation of the tendonopathy? Were those two medical conditions included within the aggravation? None of this is supported by the plaintiff's doctor, yet it was in evidence for the jury's consideration.

{¶ 60} For the foregoing reasons, I would sustain appellant's first and second assignments or error, reverse the judgment of the trial court, and remand the matter to that court for a new trial, rendering appellant's third assignment of error moot.