OPINION
{¶ 1} Appellant/cross-appellee, State Housing Authority Risk Pool Association, Inc. ("SHARP") appeals the decision of the Portage County Court of Common Pleas granting appellee/cross-appellant, Erie Insurance Group ("Erie") summary judgment. Erie cross appeals the denial of summary judgment by the same court in a prior judgment entry.
 {¶ 2} SHARP and Erie each insured the Portage Metropolitan Housing Authority ("PMHA") at different times under separate insurance contracts.[1] The current appeal is a result of a lawsuit in which SHARP sought the trial court to compel Erie to pay attorney fees and costs incurred by SHARP in defending two previous lawsuits filed against PMHA by LRL Properties ("LRL").
 {¶ 3} On October 21, 1992, LRL filed its first suit against PMHA in federal court. The evidence is undisputed that PMHA notified SHARP of the federal suit, who retained legal representation to defend PMHA; On December 20, 1992, SHARP's counsel filed a Civ. R. 12(b)(6) motion to dismiss for failure to state a claim. On March 15, 1993, the district court granted the motion and dismissed LRL's complaint. Subsequent to this dismissal, on or about May 24, 1993, PMHA notified Erie of the federal lawsuit. At this time, the case was on appeal to the Sixth Circuit Court of Appeals.
 {¶ 4} According to an affidavit filed by David Froelich, claims manager for Erie, PMHA agreed "that it would not pursue a coverage determination or defense from Erie * * *." Instead, "PMHA would continue to rely on the defense already being provided by [SHARP]." Froelich further testified: "Erie reiterated its offer to assist in defending the federal appeal, but PMHA did not respond or request such assistance."
 {¶ 5} On February 1, 1994, LRL filed a second complaint against PMHA in state court. In its state lawsuit, LRL alleged, inter alia, various intentional torts including defamation, conspiracy to defame, fraud, and interference with business relations. LRL's claims were grounded on its assertion that PMHA and its commissioners "willfully" conspired and engaged in a "course of conduct maliciously calculated to injure" the plaintiffs.
 {¶ 6} On March 9, 1994, Erie agreed to defend PMHA in the state case subject to a reservation of Erie's right to withdraw the defense in the event evidence established the Erie policy did not cover the claims. According to Froelich, Erie advised PMHA and SHARP that, pursuant to its policy, it would defend the state case through defense counsel of its own choosing. Erie appointed counsel, Attorney Richard Boyce, to participate in PMHA's defense. According to his affidavit, Attorney Boyce "attended status conferences and pretrials, drafted discovery, attended depositions, and otherwise participated in the litigation. I also cooperated in the defense with counsel appointed by [SHARP]."
 {¶ 7} On June 12, 1998, the Portage County Court of Common Pleas granted summary judgment in PMHA's favor, concluding that PMHA was immune from LRL's intentional tort claims and LRL's action was barred by the relevant statute of limitations. On December 20, 1999, this court affirmed the trial court's decision regarding the intentional tort claims but remanded the case for further proceedings on LRL's breach of contract claim. See, LRL Properties v. Portage Metropolitan Housing Authority
(Dec. 17, 1999), 11th Dist. No. 98-P-0070, 1999 Ohio App. LEXIS 6130. Erie subsequently advised PMHA it was withdrawing its defense pursuant to its reservation of rights.
 {¶ 8} On February 7, 2001, the trial court granted summary judgment in PMHA's favor which was affirmed by this court in LRL Properties v.Portage Metropolitan Housing Authority (June 7, 2002), 11th Dist. No. 2001-P-0030, 2002 Ohio App. LEXIS 2833. This decision ended the LRL litigation.
 {¶ 9} That said, on December 7, 2000, SHARP filed suit seeking a declaration that (1) Erie violated its duty to defend PMHA in the two lawsuits discussed above; (2) SHARP fully defended both lawsuits; and (3) SHARP is thus entitled to contribution from Erie for the costs incurred in defense of PMHA.
 {¶ 10} Erie subsequently filed its first motion for summary judgment arguing that SHARP had been under no duty to defend PMHA in the LRL lawsuits; thus, SHARP had voluntarily incurred the costs of defense and could not, as a matter of law require Erie to contribute to the costs of the defense. The trial court denied this motion on September 23, 2002.
 {¶ 11} Erie filed a second motion for summary judgment on December 26, 2002 arguing that exclusions to the coverage provided to PMHA under the Erie policies applied to the claims in the LRL suits and Erie thus never had a duty to defend PMHA. Erie also argued that PMHA provided late notice of the first (federal) LRL lawsuit and did not pursue Erie's assistance after providing notice. On April 10, 2003, the trial court awarded summary judgment in Erie's favor.
 {¶ 12} On May 8, 2003, SHARP filed the instant appeal from the trial court's April 10, 2003 judgment entry. On May 19, 2003, Erie filed a cross-appeal challenging the trial court's adverse ruling on its first motion. For ease of discussion, we shall address SHARP's assigned errors out of order.
 {¶ 13} In its second assignment of error SHARP contends:
 {¶ 14} "The trial court erred in granting Erie's motion for summary judgment on SHARP's claims for contribution or reimbursement of costs incurred by SHARP in defending PMHA in the LRL Federal Lawsuit on the basis that the notice provided by PMHA to Erie Insurance concerning LRL Properties' federal court lawsuit was as a matter of law, unreasonably late and presumptively prejudicial to Erie."
 {¶ 15} Under Civ. R. 56:
 {¶ 16} "summary judgment is proper `if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.' Further, `summary judgment shall not be rendered unless it appears from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.'" Ormet Primary Aluminum Corp. v. Employers Ins. Of Wausau,88 Ohio St.3d 292, 300, 2000-Ohio-330.
 {¶ 17} SHARP argues that, at the time PMHA was sued by LRL in federal court, Erie was no longer PMHA's insurance carrier. However, once PMHA officials recognized that the alleged events giving rise to the LRL lawsuit occurred during a period when Erie insured PMHA, Erie was given notice. Under these facts SHARP concludes the question of the reasonableness of notice involves material issues of fact sufficient to withstand summary judgment. We disagree.
 {¶ 18} Erie's policy condition required an insured to provide notice "as soon as possible." The notice provision requires an insured to provide: the insured's name and policy number, the time, place, and circumstances of the accident or occurrence; and names and addresses of injured persons and witnesses. The policy additionally warns that expenses incurred by the insured must be born by the insured.
 {¶ 19} A provision in an insurance policy requiring timely notice to the insurer of an accident, occurrence, or loss requires notice within a reasonable time in view of all surrounding circumstances. See, e.g.,Ferrando v. Auto-Owners Mut. Ins. Co., 98 Ohio St.3d 186, ¶ 30,2002-Ohio-7217. Generally, the question of whether notice was timely is one for the factfinder. Champion Spark Plug Co. v. Fidelity CasualtyCo. of New York (1996), 116 Ohio App.3d 258, 263. However, where the facts are not in dispute and reasonable minds could not draw conflicting conclusions from the evidence and the insured provides no plausible grounds for excuse in the delay, the question of timely notice may be resolved as a matter of law. Hamilton Mut. Ins. Co., v. Perry (Feb. 26, 1993), 6th Dist. No. 92-OT-031, 1993 Ohio App. LEXIS 1167, 10. Under such circumstances, a presumption of prejudice to the insurer arises and the claimant bears the burden of rebutting this presumption. Id.
 {¶ 20} The federal suit against PMHA was filed on October 21, 1992. PMHA provided Erie with notice on May 24, 1993, some seven months after the filing of suit and two months after the case was dismissed. Both SHARP and PMHA were put on notice of the timeframe during which the alleged defamatory conduct took place soon after the complaint was filed. However, according to SHARP, PMHA officials did not recognize that PMHA was under Erie's insurance coverage during the relevant timeframe for seven months.
 {¶ 21} Although PMHA was no longer insured by Erie, it is not unreasonable to expect the PMHA officials to whom SHARP refers would have some awareness of past insurers or, with due diligence,[2] would discover relevant past insurers before the dismissal of the case; this is true particularly where PMHA was being sued for defamation and conspiracy to defame and the insurer during the relevant timeframe provided coverage for, inter alia, injury or damage resulting from defamation. At the very least, with due diligence, PMHA's officials would have discovered Erie's possible role in the suit before its dismissal.
 {¶ 22} As it is not unreasonable to charge PMHA officials with an awareness of such facts or expect that, with due diligence, such facts would become apparent, it follows that PMHA should have provided Erie with notice at approximately the same time it provided SHARP with notice. With these observations in mind, in conjunction with the uncontested fact that PMHA failed to notify Erie until after the suit was dismissed, notice was unreasonable as a matter of law.
 {¶ 23} It also bears noting that SHARP's argument serves to fundamentally undermine many of the policies animating notice provisions. A notice provision in an insurance policy serves many functions: It provides the insurer with an awareness of occurrences early enough that it can have a meaningful opportunity to investigate the matter; moreover, a notice provision permits an insurer to determine whether the allegations state a claim under the policy or whether a complaint is fraudulent, invalid, or excessive. Ormet Primary AluminumCorp., supra, at 302-303. In general, notice provisions allow the insurer to "step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, and pursue possible subrogation claims." Id. citing, Am. Ins. Co. v. FairchildIndustries, Inc. (E.D.N.Y., 1994), 852 F. Supp. 1173, 1179.
 {¶ 24} Under the circumstances, Erie had no opportunity to investigate the facts, investigate coverage, or pursue its own litigation strategies. Moreover, the Erie policy expressly reserved the right to defend a suit against anyone it protected with an attorney of its choice. Here, PMHA's untimely notice divested Erie of this contractual right. More problematic, SHARP's current claim seeks to impute to Erie the fees and costs of the federal litigation amassed by its chosen counsel notwithstanding Erie's contractual reservation. Even though the federal case was dismissed for failure to state a claim, SHARP's retained counsel had billed nearly $35,000 in attorneys fees for which Erie could be held neither legally nor equitably responsible. Notice was a pre-condition for coverage. Here, PMHA's late notice violated the terms of the Erie policy and undermined the purposes of timely notice provisions. Therefore, under the circumstances, PMHA's notice was legally unreasonable.
 {¶ 25} As we have determined PMHA's notice was unreasonable, Erie is entitled to a presumption of prejudice. In the current matter, SHARP has failed to offer evidence to rebut the presumption of prejudice. In fact, SHARP baldly concludes, Erie suffered no prejudice because the federal lawsuit was dismissed. This argument fails to acknowledge that Erie's contractual right to investigate and otherwise manage PMHA's defense was compromised as a result of SHARP's unreasonable notice. SHARP further ignores the relief it is seeking through the instant action; viz., contribution on the near $35,000 in fees tallied by SHARP's legal team defending PMHA in the federal lawsuit. If Erie received proper notice, it may have been able to manage the litigation with less expenditure. In our view, Erie was prejudiced by the inability to exercise its right to control PMHA's defense in conjunction with the fees SHARP seeks to impute upon Erie for the time and effort of its chosen attorneys.
 {¶ 26} Thus, pursuant to the foregoing discussion, we hold that reasonable minds could only conclude that Erie suffered actual prejudice from the delay. Ormet, supra. SHARP's second assignment of error is overruled.
 {¶ 27} SHARP's third assignment of error reads:
 {¶ 28} "The Trial Court erred in granting Erie's motion for summary judgment on SHARP's claims for contribution or reimbursement of costs incurred by SHARP in defending PMHA in the LRL Federal Lawsuit after PMHA provided notice of the suit to Erie on the basis that PMHA waived the right to receive a defense."
 {¶ 29} SHARP argues the trial court erred by not requiring Erie to sustain its burden of proof on the affirmative defense of waiver.
 {¶ 30} Initially, the judgment entry on which SHARP's appeal is based does not indicate summary judgment was grounded on a waiver executed by PMHA. With respect to the federal lawsuit, the court addressed PMHA's late notice and determined it was unreasonably late as a matter of law. As notice was unreasonably late, Erie was entitled to a presumption of prejudice. In the court's view, PMHA failed to rebut this presumption. The lower court consequently awarded summary judgment in Erie's favor as to SHARP's expenses vis a vis the federal lawsuit. At no point does the court premise its determination upon an alleged waiver executed by PMHA.
 {¶ 31} A waiver, in relation to contracts, is a voluntary relinquishment of a known right. The White Co. v. The CantonTransportation Co. (1936), 131 Ohio St. 190, at paragraph one of the syllabus. Under the circumstances, Erie did not seek a waiver of PMHA's right to receive Erie's defense. In fact, evidence indicates that Erie availed itself to PMHA, yet PMHA declined Erie's assistance. Although these facts may suggest a tacit waiver, evidence indicates that Erie did not treat PMHA's omission as a technical waiver as it never claimed PMHA relinquished any of its known rights. As Erie never claimed PMHA waived its right to receive Erie's defense during the federal litigation and the trial court did not make an affirmative ruling on the matter, SHARP's final argument does not respond to an issue presented to the trial court. We may review only those matters upon which the trial court has had occasion to rule. Hence, SHARP's third assignment of error is not properly before us.
 {¶ 32} However, even if SHARP's argument were properly before us, SHARP's claim would be derivative of PMHA's right to enforce the terms of its underlying contract with Erie. Thus, SHARP "stands in the shoes" of PMHA and cannot succeed to or acquire any right or remedy not possessed by PMHA. Chemtrol Adhesives, Inc. v. American Manufacturers Mut. Ins.Co. (1989), 42 Ohio St.3d 40, paragraph one of the syllabus.
 {¶ 33} As stated supra, PMHA's contract with Erie stated:
 {¶ 34} "Anyone we protect will not make payments, assume obligations or incur expenses, other than for first aid, except at their own cost."
 {¶ 35} Erie did not authorize or ratify the attorneys utilized by SHARP in PMHA's defense. By using SHARP's defense team during the federal lawsuit, PMHA effectively "incurred expenses" outside the scope of its contract with Erie. As PMHA has no enforceable right to reimbursement from Erie and SHARP has no rights against Erie independent of those possessed by PMHA, SHARP has no enforceable right to reimbursement from Erie.
 {¶ 36} SHARP's third assignment of error is without merit.
 {¶ 37} In its first assignment of error, SHARP alleges:
 {¶ 38} "The trial court erred in granting Erie's motion for summary judgment on SHARP's claims for contribution or reimbursement of costs incurred by SHARP in defending PMHA in the LRL lawsuits on the basis that Erie had no duty to defend PMHA against the claims alleged in LRL's complaints."
 {¶ 39} The trial court's judgment entry and the record reveals that Erie participated in PMHA's defense or at least availed itself to such participation in both suits. However, as the extent of this participation was unclear, the trial court's analysis was grounded not upon the nature of this participation, but whether Erie had a duty to defend PMHA at all. The trial court concluded it had no such duty. We disagree with the lower court's conclusion but affirm for different reasons.
 {¶ 40} Erie's policy covered damages resulting from personal injury or property damage caused by an accident or repeated exposure to the same harmful conditions. "Personal injury" includes libel, slander, and defamation of character. Erie's policy also set forth certain exclusions; in particular, the policy states:
 {¶ 41} "A. We do not cover under Personal Injury Liability (Coverage F), Property Damage Liability (Coverage G) and Medical Payments (Coverage I):
 {¶ 42} "(1) injury or damage expected or intended from the standpoint of anyone we protect.
 {¶ 43} "* * *
 {¶ 44} "B. We do not cover under Personal Injury Liability (Coverage F) and Property Damage Liability (Coverage G):
 {¶ 45} "* * *
 {¶ 46} "(6) suits for libel, slander or defamation of character made against anyone we protect if the publication or statement:
 {¶ 47} "(a) * * *
 {¶ 48} "(b) was knowingly untrue."
 {¶ 49} Although LRL made allegations sounding in breach of contract as well as other intentional torts, the current appeal focuses solely upon the "defamation and conspiracy to defame" count(s) within LRL's complaint. This aspect of the complaint alleged that PMHA and other defendants engaged in a "continuing conspiracy * * * to derogate plaintiffs' business interests and ruining plaintiffs' financial standing by impugning plaintiffs' reputation."[3] In particular, the complaint alleged that PMHA's executive director "maliciously, willfully and without justification uttered and printed false and untrue words communicated to third parties * * *." The complaint continued:
 {¶ 50} "All such communications were part and parcel of defendants conspiracy and course of conduct maliciously calculated to injure the Plaintiffs' credit and reputation, derogate Plaintiffs' business interests, reduce the value of Plaintiffs' property, and coerce Plaintiffs into selling Kenwood Courts to Defendant PMHA or to those with whom Defendants had a favored relationship all for the political and economic gain of the individual Defendants." (Emphasis added.)
 {¶ 51} On one hand, the complaint facially alleges PMHA "intentionally" harmed LRL; by operation of exclusion A(1), supra, it would appear PMHA would be excluded from coverage and Erie would be thereby relieved from any duty to defend.
 {¶ 52} However, the LRL complaint specifically alleges defamatory conduct on the part of PMHA. The complaint does not allege that the defamatory statements purportedly made by PMHA (and/or its agents) were knowingly untrue. Under Erie Policy exclusion B(6)(b), defamatory conduct is excluded only if it "was knowingly untrue." As we cannot assume one exclusion has primacy over the other, a genuine issue of fact could exist as to whether the Erie Policy excluded PMHA from coverage; by implication, the court erred when it concluded that Erie had no duty to defend as a matter of law.
 {¶ 53} However, whether Erie had a legal duty to defend is somewhat of an academic question: The record indicates Erie made itself available to defend PMHA and thus functionally acknowledged its threshold duty; however, SHARP continued to control the litigation process without Erie's assistance in direct contravention of the Erie/PMHA insurance contract. Specifically, SHARP had already hired its own attorneys who had managed the litigation process from its inception. Moreover, the record suggests that SHARP maintained general, internal control of the litigation even after Erie joined the defense team.
 {¶ 54} Erie's insurance contract with PMHA afforded Erie the right to investigate or settle any claim or suit for damages against its insureds. Erie also reserved the right to defend any such suit with a lawyer of its choice "even if the allegations are not true * * *." The contract also prohibited PMHA from assuming obligations or expenses independent of those included in the insurance contract except at its own cost.
 {¶ 55} Here, SHARP, pursuant to its (perceived) duty to defend PMHA hired its own defense team and controlled the general flow of litigation. Erie neither chose nor ratified SHARP's choice of attorneys. Further, SHARP did not delegate any particular defense duties to Erie after Erie entered the suit. In fact, the record contains no evidence that SHARP had any interest in utilizing Erie's assistance. In essence, Erie offered to defend PMHA pursuant to its duty to defend, Erie's duty was obviated by SHARP's assumption of complete control of PMHA's defense.
 {¶ 56} With this in mind, any expenses resulting from SHARP's defense of PMHA must be born by SHARP. We note, in conclusion, that if SHARP wished to avoid paying for PMHA's defense, SHARP should have surrendered the case to Erie so Erie could control the means of defense pursuant to its contract with PMHA. In failing to do so, SHARP voluntarily incurred expenses and fees not subject to reimbursement under the Erie/PMHA insurance contract.
 {¶ 57} For the foregoing reasons, appellant's first assignment of error is without merit.
 {¶ 58} For the above reasons, SHARP's three assignments of error lack merit and we therefore affirm the April 10, 2003 decision of the Portage County Court of Common Pleas granting Erie summary judgment.
 {¶ 59} In its cross-appeal, Erie asserts the following assignment of error:
 {¶ 60} "The trial court erred in denying Erie's motion for summary judgment."
 {¶ 61} Erie's cross-appeal is based upon the trial court's September 23, 2002 judgment entry denying its initial motion for summary judgment. In essence, Erie argues that, pursuant to its own insurance policy, SHARP had no duty to defend PMHA in the LRL lawsuits. The SHARP policy provides that "SHARP shall have the opportunity to be associated with the insured in defense of any and all claims." This language, Erie argues, gives SHARP the right to defend, but does not impose a duty to defend. Thus, Erie concludes, SHARP's voluntary assumption of PMHA's defense precluded its claim for reimbursement. We disagree with Erie's argument and affirm the trial court's decision.[4]
 {¶ 62} The SHARP policy provides: "SHARP shall have the opportunity to be associated with the insured in defense of any and all claims." Erie contends this provision affords SHARP the right to defend, but imposes no such duty. However, SHARP's "Joint Powers Agreement and Bylaws," which is incorporated into the SHARP policy indicates: "SHARP may refuse to defend and indemnify a Member only in the event that a claim or occurrence (a) is determined to be outside the scope of coverage or (b) is not untimely submitted."
 {¶ 63} One provision of the policy gives SHARP the right to defend PMHA, but does not impose a duty; a separate provision imposes a duty to defend PMHA unless the claim is outside the scope of the policy or not timely filed. Erie does not allege that the claim was outside the scope of the policy or untimely filed. As the policy is reasonably susceptible to more than one interpretation, the policy language will be strictly construed against the insurer, viz., SHARP. See, Scott-Pontzer v. LibertyMutual Fire Ins. Co. (1999), 85 Ohio St.3d 660, 664. Thus, by operation of law, a duty to defend PMHA would be imposed upon SHARP. Appellant's cross-appeal is therefore overruled.
 {¶ 64} It is worth noting that our respective holdings on SHARP's appeal and Erie's cross-appeal are not inconsistent. Even if SHARP had a duty to defend as a matter of law, it maintained complete control of the litigation in both the federal and the State suits. As discussed in SHARP's first assignment of error, supra, in order to be legitimately entitled to contribution from Erie, Erie had to authorize or ratify SHARP's choices for attorney, litigation strategies, and other features of PMHA's defense. Erie did not so authorize.
 {¶ 65} For the foregoing reasons, SHARP's three assignments of error are overruled, Erie's cross-appeal is overruled, and the judgment of the Portage County Court of Common Pleas is hereby affirmed.
Ford, P.J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] The LRL lawsuits were based on events which occurred in 1988, 1989, and 1990; at the time of all the allegations, Erie insured PMHA. However, at the time LRL filed its lawsuits, PMHA had severed ties with Erie and was insured by SHARP.
[2] In Ohio, an insured must use "due diligence" in ascertaining a loss and notifying an insurer. Heller v. The Standard Accident Ins. Co.
(1928), 118 Ohio St. 237, paragraph two of the syllabus.
[3] Paragraphs 56, 57, 58, 78, and 130 of LRL complaint set forth the substantive facts on which the defamation and conspiracy to defame allegations are based.
[4] As each of SHARP's assignments of error were overruled, Erie's cross appeal may seem functionally moot. However, Erie's cross-appeal is completely independent of SHARP's appeal. As such, Erie's cross-appeal is not subject to the doctrine of mootness because its resolution is based upon logic not technically included in SHARP's appeal. See, App. R. 3(C) in conjunction with its accompanying staff note; see, also Rzeszotarski v.Sanborn (June 7, 1996), 11th Dist. No. 95-G-1906,1996 Ohio App. LEXIS 2372, at 25-26.