[Cite as *W. Res. Mut. Cas. Co. v. OK Cafe & Catering, Inc.*, 2013-Ohio-3397.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

WESTERN RESERVE MUTUAL
CASUALTY COMPANY,

      PLAINTIFF-APPELLANT,               CASE NO.  9-12-46

      v.

OK CAFÉ & CATERING, INC., ET AL.      O P I N I O N

      DEFENDANTS-APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 10-CV-0284

Judgment Reversed and Cause Remanded

Date of Decision:   August 5, 2013

APPEARANCES:

    *Shawn W. Maestle* and  *David L. Jarrett*  for Appellant

    *Jeff Ratliff*  for Appellee, Tracey Cooperider

**PRESTON, P.J.**

{¶1} Plaintiff-appellant, Western Reserve Mutual Casualty Co. ("Western Reserve"), appeals the Marion County Court of Common Pleas' July 11, 2012 judgment entry granting summary, declaratory judgment in favor of defendant-appellee, Tracey Cooperider ("Cooperider"). For the reasons that follow, we reverse.

{¶2} On October 13, 2006, Cooperider allegedly was injured on the premises of OK Café & Catering, Inc. ("OK Café"). (Kulka Aff. ¶ 2, Doc. No. 24, attached). From December 27, 2005 to December 27, 2006, Western Reserve insured OK Café under a commercial general liability policy ("CGL Policy"). (CGL Policy, Doc. No. 24, attached). Cooperider's original attorney sent letters to OK Café on May 10 and May 22, 2007 notifying it of his representation of Cooperider and requesting the contact information of OK Café's insurance provider. (Jensen Aff. ¶ 1-2, Doc. No. 30, attached). One of OK Café's co-owners, Karen Gillespie, notified her insurance agent of the attorney's May 22, 2007 letter, and the agent notified Western Reserve. (Kulka Aff. ¶ 2, Doc. No. 24, attached); (Kulka Depo. at 44-45). On June 12, 2007, a Western Reserve claims specialist, Thomas Kulka, sent a letter to Cooperider's original attorney confirming receipt of his May 22, 2007 letter. (Kulka Aff. ¶ 3, Doc. No. 24,

attached). That same day, Kulka sent a letter to OK Café notifying it that he would be investigating the claim under a reservation of rights. (*Id.* ¶ 4).

{¶3} According to Kulka, as of February 2008, Cooperider's allegations were unsupported by the information obtained from OK Café and the information provided by Cooperider's original attorney. (*Id.* ¶ 5). On February 7, 2008, Kulka sent a letter to Cooperider requesting that he or his counsel contact Kulka to discuss the claim. (*Id.* ¶ 6). Kulka received no response from Cooperider. (*Id.*). Kulka closed the claim file after he determined that the statute of limitations had run on Cooperider's claim, and after he checked on November 10, 2008 with the Marion County Clerk of Courts, who did not locate a complaint filed by Cooperider. (*Id.*); (Kulka Depo. at 36-38); (Ratliff Aff. ¶ 1-3, Doc. No. 33, attached).

{¶4} Meanwhile, in late September or early October 2008, after no negotiations took place and Cooperider's claim remained unsettled, Cooperider's original attorney ceased representing him. (Jensen Aff. ¶ 4, Doc. No. 30, attached). On October 14, 2008, Cooperider filed a pro se complaint alleging that he had suffered damages from a fall that occurred on OK Café's premises. (Western Reserve's Motion for Summary Judgment ("MSJ") at 4, Ex. E, Doc. No. 24); *Cooperider v. OK Cafe & Catering, Inc.*, 3d Dist. Marion No. 9-09-28, 2009-Ohio-6715, ¶ 2. OK Café was successfully served on October 30, 2008 by

certified mail when Gillespie's daughter and OK Café employee, Ryan Gillespie, signed for the certified mailing containing the complaint and summons. (*Id.*); *Id.*; (K. Gillespie Depo. at 68-69, 80-82). Although Ryan acknowledged signing for the certified mailing, neither she nor Gillespie knew what happened to it after she signed for it. (K. Gillespie Depo. at 68-69, 80-82); *Cooperider*, 2009-Ohio-6715, at ¶ 2. Gillespie never saw the complaint or summons, and she could only assume that they were accidentally thrown away or misfiled. (*Id.* at 37, 80-82); *Id.*

{¶5} After OK Café failed to file an answer, Cooperider moved for default judgment as to the issue of liability on December 4, 2008. (Western Reserve's MSJ at 4, Ex. E, Doc. No. 24); *Cooperider*, 2009-Ohio-6715, at ¶ 2. Four days later, the trial court granted Cooperider's motion. (*Id.*); *Id.* On February 5, 2009, Western Reserve received from OK Café and its insurance agent notice of Cooperider's lawsuit and the default judgment. (Boehm Aff. ¶ 2, 5, Doc. No. 24, attached). Under a reservation of its rights under the CGL Policy, Western Reserve retained an attorney for OK Café to attempt to have the default judgment set aside and, if necessary, to represent OK Café at the damages hearing. (*Id.* ¶ 3, 5). On March 6, 2009, OK Café filed a motion to set aside the default judgment. (Western Reserve's MSJ at 4, Ex. E, Doc. No. 24); *Cooperider*, 2009-Ohio-6715, at ¶ 2.

**{¶6}** On March 31, 2009, the trial court denied OK Café's motion to set aside the default judgment, concluding that OK Café failed to demonstrate excusable neglect. (*Id.*); *Id.* at ¶ 3. Western Reserve claims specialist, Horst Boehm, sent a letter to Gillespie on April 6, 2009, notifying her that Western Reserve's investigation revealed that OK Café was served with the complaint and summons and that OK Café failed to notify Western Reserve until after the trial court entered default judgment, which according to Western Reserve amounted to a failure to comply with OK Café's obligations under the CGL Policy. (Boehm Aff. ¶ 5, Doc. No. 24, attached). Boehm also informed Gillespie that Western Reserve continued to reserve its right to deny coverage. (*Id.*).

**{¶7}** The trial court held a damages hearing on June 29, 2009, which neither Gillespie nor anyone from OK Café attended alongside OK Café's counsel, retained for it by Western Reserve. (*Id.* ¶ 6); (K. Gillespie Depo. at 40-44). On July 7, 2009, the trial court awarded Cooperider $130,000 in damages, plus interest at 5% per annum. (Western Reserve's MSJ at 5, Ex. E, Doc. No. 24); *Cooperider*, 2009-Ohio-6715, at ¶ 3. OK Café appealed to this Court, and, on December 21, 2009, we affirmed the judgment of the trial court denying OK Café's motion to set aside the default judgment. *Cooperider*, 2009-Ohio-6715, at ¶ 15-17. OK Café appealed to the Supreme Court of Ohio, which on May 5, 2010,

declined to accept the appeal for review. *Cooperider v. OK Café & Catering, Inc.*, 125 Ohio St.3d 1414, 2010-Ohio-1893.

{¶8} On March 31, 2010—before the Supreme Court declined to accept the appeal—Western Reserve filed the underlying declaratory judgment action against OK Café and Cooperider. (Complaint, Doc. No. 1). Western Reserve sought a declaration that it owed neither a defense nor indemnity to OK Café, nor indemnity to Cooperider, based on OK Café's alleged failures to comply with the CGL Policy. (*Id.*). Cooperider filed an answer on June 4, 2010, followed by an amended answer and counterclaim with leave of court on October 4, 2010. (Doc. Nos. 5, 10). Cooperider's counterclaim contained two causes of action—statutory liability pursuant to R.C. 3929.06 and bad faith. (Doc. No. 10). On October 14, 2010, Western Reserve moved to strike Cooperider's amended answer and counterclaim. (Doc. Nos. 11, 15). Western Reserve filed an answer to Cooperider's counterclaim on November 8, 2010. (Doc. No. 13). In a December 27, 2010 entry, the trial court allowed Cooperider's amended answer to stand but concluded that Cooperider had no standing to assert a counterclaim for bad faith

and dismissed "said counterclaim." (Doc. No. 16).[1]

**{¶9}** Western Reserve filed a motion for summary judgment on May 23, 2011, requesting that the trial court declare that Western Reserve was not required to pay Cooperider or OK Café because any coverage to which OK Café may have been entitled under the CGL Policy was void based on OK Café's failure to satisfy the CGL Policy's provisions. (Doc. No. 24). On June 2, 2011, Cooperider filed a motion for summary judgment, requesting that the trial court declare that OK Café satisfied the provisions of the CGL Policy and that, under R.C. 3929.06, Western Reserve was required to pay to Cooperider the judgment rendered against OK Café. (Doc. No. 30). On June 10, 2011, Cooperider filed a memorandum in opposition to Western Reserve's motion for summary judgment, attaching an affidavit of the Clerk of Court for the Marion County Court of Common Pleas. (Doc. No. 33). Western Reserve moved to strike the Clerk's affidavit on June 27, 2011. (Doc. No. 34). That same day, Western Reserve filed its combined reply in support of its motion for summary judgment and memorandum in opposition to Cooperider's motion for summary judgment. (Doc. No. 35).

---

[1] It is unclear from the trial court's December 27, 2010 entry whether it also disposed of Cooperider's second cause of action—statutory liability pursuant to R.C. 3929.06. R.C. 3929.06 allows successful plaintiffs, such as Cooperider, to file postjudgment suits against a tortfeasor's insurer. *See Estate of Heintzelman v. Air Experts, Inc.*, 126 Ohio St.3d 138, 2010-Ohio-3264, ¶ 7. Whether the trial court's December 27, 2010 entry dismissed Cooperider's entire counterclaim or only his bad faith cause of action is immaterial because the trial court's July 11, 2012 judgment entry, on appeal before this Court, disposed of any R.C. 3929.06 cause of action by "finding that there is insurance coverage in this case." (Doc. No. 42). *See Westfield Cos. v. Gibbs*, 11th Dist. Lake No. 2004-L-058, 2005-Ohio-4210, ¶ 12.

{¶10} Cooperider filed his reply in support of his motion for summary judgment and his memorandum in opposition to Western Reserve's motion to strike on July 15, 2011. (Doc. Nos. 37-38). On August 1, 2011, Western Reserve filed its reply in support of its motion to strike. (Doc. No. 39). On August 2, 2011, Cooperider moved the trial court to reconsider its December 27, 2010 judgment entry, in which it dismissed his counterclaim for bad faith. (Doc. No. 40). The trial court denied Cooperider's motion for reconsideration the next day. (Doc. No. 41).

{¶11} On July 11, 2012, the trial court issued its summary, declaratory judgment in favor of Cooperider and against Western Reserve, finding insurance coverage. (Doc. No. 42). OK Café filed a "suggestion of stay" on July 23, 2012, based on its having filed for Chapter 7 bankruptcy protection in the United States District Court for the Northern District of Ohio. (Doc. No. 43). The trial court granted OK Café's request and stayed the case on July 30, 2012. (Doc. No. 44). That same day, Western Reserve filed a motion under Civ.R. 62 to stay the execution of judgment pending appeal. (*Id.*).[2] Cooperider filed a memorandum in opposition to Western Reserve's Civ.R. 62 motion to stay on August 2, 2012. (Doc. No. 45).

---

[2] The case docket does not assign a separate document number to Western Reserve's Civ.R. 62 motion to stay execution of judgment pending appeal.

Case No. 9-12-46

{¶12} On August 7, 2012, Western Reserve filed its notice of appeal and suggestion of stay.[3] (Doc. No. 47). On August 17, 2012, we stayed this appeal due to OK Café's pending bankruptcy proceeding. On December 21, 2012, we vacated our August 17, 2012 judgment entry staying the appeal, reactivated the appeal, and set a briefing schedule. Western Reserve raises two assignments of error for our review.[4] Because they are related, and because Western Reserve addresses them together, we will address both assignments of error together.

### Assignment of Error No. I

**The trial court erred in issuing a declaratory judgment that the Western Reserve CGLPolicy [sic] provided coverage for Cooperider's default judgment damages.**

### Assignment of Error No. II

**The trial court erred in determining that OK Café did not breach the Western Reserve CGL Policy's conditions by failing to notify Western Reserve of a pending lawsuit before a default judgment was rendered.**

{¶13} In its first and second assignments of error, Western Reserve argues that the trial court erred when it concluded in its judgment entry granting

---

[3] Western Reserve's notice of appeal indicates it is appealing July 11, 2012 and July 13, 2012 judgment entries. (Doc. No. 47). The July 13, 2012 "judgment entry," however, was rather a "NOTICE OF APPEALABLE ORDER" issued by the clerk of courts to notify Western Reserve's counsel of the July 11, 2012 judgment entry. (*See* Doc. No. 42). Therefore, only the final appealable order itself—the July 11, 2012 judgment entry—is before this Court.

[4] Western Reserve's brief does not include "[a] statement of the assignments of error presented for review," as required by App.R. 16(A)(3). We, therefore, have discretion to disregard Western Reserve's arguments under App.R. 12(A)(2). *Heider v. Siemens*, 3d Dist. Allen No. 1-10-66, 2011-Ohio-901, ¶ 27, fn. 1. However, we will, in the interests of justice, address the two statements that Western Reserve first identified in its reply brief as assignments of error.

summary, declaratory judgment that the CGL Policy provided coverage in this case. Western Reserve challenges the trial court's rejection of its argument that OK Café voided any otherwise available coverage by breaching the CGL Policy's notice provisions.

{¶14} We review a decision to grant summary judgment de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390 (2000). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

{¶15} The CGL Policy lists several duties of OK Café "in the event of occurrence, offense, claim or suit":

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

* * *

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)   How, when and where the "occurrence" or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.   If a claim is made or "suit" is brought against any insured, you must:

(1)   Immediately record the specifics of the claim or "suit" and the date received; and

(2)   Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.   You and any other involved insured must:

(1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)   Authorize us to obtain records and other information;

(3)   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Emphasis sic.)  (CGL Policy, Doc. No. 24, attached).

{¶16} The CGL Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id.*).  It defines "suit," in relevant part, as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."  (*Id.*).  The CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  (*Id.*).

{¶17} In its brief, Western Reserve does not address whether Cooperider's lawsuit—alleging a bodily injury sustained while on OK Café's premises—involved a bodily injury to which coverage applied under the CGL Policy.  Rather, Western Reserve argues that because OK Café failed to satisfy its "duties," excerpted above, in the event of a claim or suit, any coverage that otherwise would

have applied was void. Cooperider argues that OK Café satisfied its obligations under the CGL Policy, and that the trial court, therefore, properly concluded coverage existed under the CGL Policy.

**{¶18}** This case requires us to determine whether OK Café satisfied its obligations under the CGL Policy. "An insurance policy is a contract whose interpretation is a matter of law." *King Estate v. Wachauf*, 3d Dist. Auglaize No. 2-12-10, 2013-Ohio-2498, ¶ 8, quoting *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 7 (internal quotation marks omitted). "To determine a contract's interpretation, a reviewing court must give effect to the parties' intent upon examination of the contract as a whole, guided by the presumption that the parties' intent is reflected by the language of the policy." *Id.*, citing *Cincinnati Ins. Co.* at ¶ 7. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.*, quoting *Cincinnati Ins. Co.* at ¶ 7 (internal quotation marks omitted). "A contract is unambiguous as a matter of law if it can be given a definite legal meaning." *Id.*, citing *Cincinnati Ins. Co.* at ¶ 7. "While ambiguity in an insurance contract is construed against the insurer and in favor of the insured, a court should not apply this rule if it results in an unreasonable interpretation of the words of the policy." *Id.* at ¶ 9, citing *Cincinnati Ins. Co.* at ¶ 8.

{¶19} The duties imposed on OK Café by CGL Policy Section IV, Paragraph 2, Subparagraphs a and b—to notify Western Reserve "as soon as practicable" of an occurrence, offense, claim, or suit—are referred to as "notice" or "prompt-notice" requirements. *See Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, ¶ 13-14; *Kelley v. State Farm Mut. Auto. Ins. Co.*, 8th Dist. Cuyahoga No. 98749, 2013-Ohio-585, ¶ 16. *See also Ormet Primary Aluminum Corp. v. Employers Ins. of Wausau*, 88 Ohio St.3d 292, 302-303 (2000) (discussing the "many purposes" served by notice provisions in insurance contracts). CGL Policy Section IV, Paragraph 2, Subparagraph c imposes duties on OK Café to forward copies of legal papers to Western Reserve and to cooperate with Western Reserve in its defense of OK Café. Courts refer to these prompt-notice and cooperation requirements as conditions precedent to coverage. *See Goodyear Tire & Rubber Co.* at ¶ 14; *Kelley* at ¶ 22, citing *Beaver Excavating Co. v. United States Fid. & Guar. Co.*, 126 Ohio App.3d 9, 16 (7th Dist.1998). If an insured fails to satisfy one of these prompt-notice or cooperation requirements, and if the insurer is prejudiced by the insured's failure, then the insurer is relieved of its obligation to provide coverage. *See Ormet Primary Aluminum Corp.* at 302-305.

{¶20} Here, the parties do not dispute that Gillespie notified her insurance agent of Cooperider's original attorney's May 22, 2007 letter informing OK Café

of his representation of Cooperider "regarding an [sic] personal injury matter which occurred [at OK Café] on October 13, 2006." (Kulka Aff. ¶ 2, Doc. No. 24, attached). Nor do the parties dispute that Western Reserve received a copy of Cooperider's original attorney's May 22, 2007 letter "on or about June 11, 2007," less than a month later. (*Id.*). The parties do not dispute that OK Café was served with Cooperider's complaint and a summons on October 30, 2008. (K. Gillespie Depo. at 68-69). Finally, they agree that OK Café did not forward a copy of the complaint and summons to Western Reserve, and that OK Café did not notify Western Reserve of the lawsuit until OK Café and its agent forwarded a notice of the damages hearing to Western Reserve in early February 2009—after default judgment on the issue of liability had been entered against OK Café on December 8, 2008. (*Id.* at 69); (Boehm Aff. ¶ 2, 5, Doc. No. 24, attached).

{¶21} The parties disagree about the meaning of the language of the CGL Policy. They spend much of their briefs disputing whether CGL Policy Section IV, Paragraph 2, Subparagraph b required OK Café to notify Western Reserve of Cooperider's lawsuit after OK Café was served with the complaint and summons on October 30, 2008. Specifically, the parties dispute the meaning of the phrase "claim is made or 'suit' is brought" in Subparagraph b and whether it obligated OK Café to notify Western Reserve of the lawsuit even after OK Café gave a copy of Cooperider's original attorney's May 22, 2007 letter to its insurance agent, who

forwarded the letter to Western Reserve. The parties also disagree about whether OK Café failed to "[c]ooperate with [Western Reserve] * * * in the * * * defense against the "suit' * * *," as required by Subparagraph c(3).

{¶22} We need not interpret Subparagraphs b or c(3) because OK Café failed to satisfy its obligations under Subparagraph c(1), requiring OK Café to "[i]mmediately send [Western Reserve] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit' * * *," and because Western Reserve was prejudiced by that failure.

{¶23} A provision in an insurance policy compelling notice "immediately" requires notice "within a reasonable time in light of all the surrounding facts and circumstances." *Goodyear Tire & Rubber Co.*, 95 Ohio St.3d 512, 2002-Ohio-2842, at ¶ 14, quoting *Ormet Primary Aluminum Corp.*, 88 Ohio St.3d at 303, syllabus (internal quotation marks omitted). "While the question of whether the insured met the notice condition is usually a question for the jury, an unexcused significant delay may be unreasonable as a matter of law." *Ormet Primary Aluminum Corp.* at 300. *See also State Hous. Auth. Risk Pool Assn., Inc. v. Erie Ins. Group*, 11th Dist. Portage No. 2003-P-0053, 2004-Ohio-7223, ¶ 19.

{¶24} Here, Subparagraph c(1) contains a prompt-notice provision that required OK Café to "immediately" send to Western Reserve "any demands, notices, summonses or legal papers received in connection with the claim or

'suit,'" even if OK Café had previously notified Western Reserve of a claim or suit. Cooperider does not dispute that OK Café failed to forward to Western Reserve a copy of the summons and complaint that the clerk of courts served on OK Café on October 30, 2008—a fact Gillespie admitted in her deposition. (*See* K. Gillespie Depo. at 69). In other words, OK Café did not simply delay in forwarding the complaint and summons to Western Reserve—it failed to forward them at all because they were "accidentally" thrown away or misfiled, and it only first notified Western Reserve of the lawsuit in early February 2009 by forwarding a copy of the notice of the damages hearing. (*See id.* at 69, 80-82); (Boehm Aff. ¶ 2, 5, Doc. No. 24, attached).

**{¶25}** OK Café's failure to forward the complaint and summons because they were accidentally thrown away or misfiled was not excusable. *See Cooperider*, 2009-Ohio-6715, at ¶ 12, 14 (affirming the trial court's conclusion that OK Café's accidental throwing away or misfiling of the complaint and summons was not excusable neglect under Civ.R. 60(B)). Cooperider fails to suggest any other way in which OK Café's failure was excusable, other than to argue that OK Café's notice obligations ceased after it forwarded to Western Reserve Cooperider's original attorney's May 22, 2007 letter. Cooperider's argument ignores the independent requirement set forth in Subparagraph c(1). We, therefore, conclude that OK Café failed as a matter of law to satisfy its

obligations under Subparagraph c(1).  *See Goodyear Tire & Rubber Co.* at ¶ 14; *Ormet Primary Aluminum Corp.* at 302-305.  *See also Allstate Ins. Co. v. Singleton*, 8th Dist. Cuyahoga No. 84371, 2004-Ohio-6117, \*2 (affirming summary, declaratory judgment in favor of the insurer and concluding that the insured's notice to the insurer, six months after the trial court rendered default judgment, was unreasonable).

{¶26} We next turn to the question of whether Western Reserve was prejudiced by OK Café's failure to forward it copies of the complaint and summons.  We conclude that it was.  "An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary." *Pennsylvania Gen. Ins. Co. v. Park-Ohio Industries*, 126 Ohio St.3d 98, 2010-Ohio-2745, ¶ 21, quoting *Ferrando v. Auto-Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, paragraph one of the syllabus.  The insured bears the burden of rebutting this presumption.  *Erie Ins. Group*, 2004-Ohio-7223, at ¶ 19. *See also Ormet Primary Aluminum Corp.* at 303.

{¶27} As a result of OK Café's failure to forward copies of the complaint and summons to Western Reserve as required by the CGL Policy, Western Reserve did not receive notice of Cooperider's lawsuit until it was too late.  Had Western Reserve received copies of the complaint and summons as the CGL Policy had designed, it could have further investigated Cooperider's claim,

determined the relative fault of the parties involved, and, most importantly, hired counsel for OK Café who would have assisted OK Café in responding to the complaint and avoiding default judgment. *Singleton*, 2004-Ohio-6117, at *2.

{¶28} Instead, OK Café notified Western Reserve of the default judgment two months after the trial court entered it. Under a reservation of rights, Western Reserve hired counsel for OK Café who moved the trial court to set aside the default judgment. The trial court denied that motion, we affirmed the trial court's decision, and the Supreme Court did not accept the appeal for review. *See Cooperider*, 2009-Ohio-6715, at ¶ 15-17, *appeal not accepted*, 125 Ohio St.3d 1414, 2010-Ohio-1893. Had OK Café forwarded copies of the complaint and summons, Western Reserve would have had the opportunity to participate in the litigation and ensure OK Café avoided default judgment. OK Café's failure to satisfy Subparagraph c(1) deprived Western Reserve of that opportunity, which resulted in actual prejudice to Western Reserve. *Fillhart v. W. Res. Mut. Ins. Co.*, 115 Ohio App.3d 200, 203-204 (3d Dist.1996), citing *Thomas v. State Farm Mut. Auto Ins. Co.*, 9th Dist. Summit No. 14888 (Apr. 17, 1991); *Singleton*, 2004-Ohio-6117, at *2. *See also Ormet Primary Aluminum Corp.* at 302-303 (stating that prompt-notice requirements allow an insurer "to step in and control the potential litigation, protect its own interests, maintain the proper reserves in its accounts, [ ] pursue possible subrogation claims[, and] make timely investigations of

occurrences in order to evaluate claims and to defend against fraudulent, invalid, or excessive claims"). Thus, Cooperider did not and could not rebut the presumption of prejudice. *See Ormet Primary Aluminum Corp.* at 303.

{¶29} We hold that, as a matter of law, by failing to forward copies of the complaint and summons to Western Reserve, OK Café failed to satisfy CGL Policy Section IV, Paragraph 2, Subparagraph c(1)—a condition to coverage—and that failure resulted in actual prejudice to Western Reserve. We further hold that OK Café's failure and the resulting prejudice to Western Reserve relieved Western Reserve of any otherwise existing obligation to provide coverage under the CGL Policy. Therefore, Western Reserve was entitled to an entry of summary, declaratory judgment in its favor.

{¶30} For the reasons above, Western Reserve's first and second assignments of error are sustained.

{¶31} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**