*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 22b0005n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

---

IN RE: DAVID W. CARMAN, SR.; TERESA L. CARMAN,
                        *Debtors*.

---

DAVID W. CARMAN, SR.; TERESA L. CARMAN,
                 *Plaintiffs-Appellants*,

    *v.*

NATIONSTAR MORTGAGE, LLC,
                   *Defendant-Appellee*.

> No. 21-8022

---

On Appeal from the United States Bankruptcy Court
for the Southern District of Ohio at Dayton.
No. 3:20-bk-30751—Guy R. Humphrey, Judge.

Decided and Filed: October 12, 2022

Before: BAUKNIGHT, CROOM, and STOUT, Bankruptcy Appellate Panel Judges.

---

**COUNSEL**

---

**ON BRIEF:** Andrew J. Zeigler, KENNEL ZEIGLER LLC, Dayton, Ohio, for Appellants.
David L. Van Slyke, PLUNKETT COONEY, Columbus, Ohio, for Appellee.

---

**OPINION**

---

**ALAN C. STOUT**, Bankruptcy Appellate Panel Judge. In this appeal, Plaintiffs-Appellants David Carman and Teresa Carman (collectively, "Debtors" or "the Carmans") appeal

the bankruptcy court's July 30, 2021 Order Granting Defendants' Amended Motion for Summary Judgment and Denying Plaintiffs' Cross-Motion for Summary Judgment. Debtors filed an adversary complaint to avoid the mortgage lien of Defendant-Appellee Nationstar Mortgage, LLC ("Nationstar") as it pertains to Teresa Carman's one-half interest in the Carmans' residence at 1313 Rochelle Avenue, Dayton, Ohio (the "Property")[1] pursuant to 11 U.S.C. § 544(a)(1) and (a)(3).

In their complaint, Debtors argued that they never intended for Teresa Carman's one-half interest in the Property to be subject to the mortgage, relying on limiting language in the original mortgage agreement ("Mortgage") that they signed in February 2002, which expressly stated that Teresa Carman had signed the Mortgage not as a "Borrower" but solely to release her dower interest in the Property. However, where no such limiting language was present in the subsequent loan modification agreement ("Loan Modification") Debtors signed in November 2014, the bankruptcy court held that Nationstar had obtained a mortgage lien on Teresa Carman's one-half interest under the Loan Modification. The bankruptcy court held that the Loan Modification contained language that unambiguously amended the Mortgage to encumber Teresa Carman's interest and awarded Nationstar summary judgment based upon that interpretation of the loan documents.

The Carmans now appeal the bankruptcy court's ruling. For the reasons stated below, the bankruptcy court's decision is **AFFIRMED**.

### STATEMENT OF ISSUES ON APPEAL

Debtors raise four issues on appeal.

1. Whether the Bankruptcy Court erred in determining the note, mortgage and loan modification documents signed by both David and Teresa Carman were unambiguous.

2. Whether the Bankruptcy Court erred in determining that Teresa Carman encumbered her previously unencumbered one-half interest, in the real estate located at 1313 Rochelle Avenue, Kettering, Ohio, by signing a loan modification agreement.

---

[1]The Property is sometimes listed as having a Kettering, Ohio address.

3. Whether the Bankruptcy Court erred in determining the issues in Paragraphs 1 and 2 even though the mortgage company that solicited the loan modification failed to comply with all formalities required by federal consumer protection statutes in taking a lien on the Appellants/Plaintiffs principal residence.

4. Whether the Bankruptcy Court's Decision creates an absurd result.

## JURISDICTIONAL STATEMENT

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and no party timely elected to have the district court hear the appeal. 28 U.S.C. § 158(b)(6) and (c)(1).

Under 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by a bankruptcy court. "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686, 1692 (2015)). "An order granting summary judgment is a final order." *JP Morgan Chase Bank v. Zwosta* (*In re Zwosta*), 395 B.R. 378, 381 (B.A.P. 6th Cir. 2008) (citing *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007)). "Moreover, the entry of an order granting summary judgment in favor of one party renders the denial of summary judgment to the opposing party final as well." *Nelson v. Fifth Third Bank* (*In re Brunsman*), 550 B.R. 733, 735 (B.A.P. 6th Cir. 2016) (citing *Rogan v. Fifth Third Mortg. Co.* (*In re Rowe*), 452 B.R. 591, 593 (B.A.P. 6th Cir. 2011)).

## STANDARD OF REVIEW

This appeal solely presents issues of law. A bankruptcy court's order granting summary judgment is reviewed *de novo*. *Rd. Sprinkler Fitters Loc. Union No. 669 U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790, 793 (6th Cir. 2012) (citation omitted); *Church Joint Venture, L.P. v. Blasingame* (*In re Blasingame*), 986 F.3d 633, 638 (6th Cir. 2021). "*De novo* review requires the appellate court to determine the law at issue independently of the Bankruptcy Court's

determination." *Plymouth Park Tax Servs., LLC v. Bowers* (*In re Bowers*), 759 F.3d 621, 625 (6th Cir. 2014) (citing *Hamerly v. Fifth Third Mortg. Co.* (*In re J & M Salupo Dev. Co.*), 388 B.R. 795, 800 (B.A.P. 6th Cir. 2008)).

**FACTS**

The facts in this appeal are not in dispute. In February 2002, David Carman executed a note to Eagle Bancorp, and both David and Teresa Carman executed a Mortgage to Eagle Bancorp as security for the note. The Mortgage, which was recorded on March 6, 2002, defines the "Borrower" as "DAVID W. CARMEN [sic], SR., MARRIED TO, TERESA L. CARMEN [sic] **." (Mortgage at 1, Adv. Proc. No. 20-3027, ECF No. 1-1.)[2] The asterisks next to Teresa Carman's name correlate with the following limiting language on the Mortgage's signature page: "TERESA L. CARMEN [sic] IS SIGNING SOLELY TO RELEASE DOWER INTEREST IN THE PROPERTY." (*Id.* at 14.) Though the exact origins of the asterisks remain unclear, the parties agree that the apparent purpose of the asterisks and limiting language was to designate Teresa Carman as a non-borrower signatory and release her dower interest in the Property.

The Mortgage was subsequently assigned to other servicers on at least three occasions before the Carmans signed the Loan Modification in November 2014. With each assignment, to which the Carmans were not signatories, the precise definition of "Borrower" changed slightly.

In November 2014, the Carmans executed the Loan Modification, which became effective on December 1, 2014, and was recorded on December 3, 2014. David and Teresa Carman both separately signed the Loan Modification, which contained the following language:

> The undersigned hereby acknowledges that the signatures below include the Borrowers on the Loan, and those of any non-borrower co-owner(s) of the Property, or a non-borrower spouse or domestic partner of a Borrower with rights of dower/curtesy/homestead and/or community property under applicable law. Such additional persons are signing solely to evidence their agreement that all of their right, title, and interest in the Property is subject and subordinate to the terms and conditions of this Agreement and the Loan Documents.

---

[2]References to the adversary proceeding docket will be designated as "(Adv. Proc. No. 20-3027, ECF No. ____.);" references to the bankruptcy case docket will be designated as "(Bankr. Case No. 20-30751, ECF No. ____);" and references to the BAP docket will be designated as "(B.A.P. Case No. 21-8022, ECF No. ____)."

(Loan Modification at 7, Adv. Proc. No. 20-3027, ECF No. 14-3.)[3]  The Loan Modification also expressly provided that the modification "amends and supplements . . . the Mortgage, Deed of Trust, or Security Deed[.]"  (*Id.* at 1.)  Importantly, unlike the original Mortgage, the Loan Modification contained no additional limiting language clarifying Teresa Carman's non-borrower status or otherwise limiting her rights and obligations under the Loan Modification.

On March 17, 2020, Debtors filed a Chapter 13 petition for bankruptcy relief.  In the "Nonstandard Provisions" of their Chapter 13 Plan, Debtors provided:

> Debtors' residence located at 1313 Rochelle Avenue, Kettering, Ohio 45429 is encumbered by a mortgage that is currently being serviced by Mr. Cooper.  The real estate is titled to both Debtors, however, Ms. Carman only signed the mortgage to release her dower rights and thus her one-half interest in the property is unencumbered.  Debtors will file an adversary proceeding to avoid the mortgage against Ms. Carman's . . . one-half interest.  Upon completion of the adversary proceeding, Debtors will pay Mr. Cooper 1/2 of the total appraised value of the real estate through the Chapter 13 plan [in] the amount of $32,250.00 as a Class 2 claim at 4.75% interest.  The remainder of the claim of Mr. Cooper will be paid as a Class 4 claim the same percentage as all other Class 4 claims.  Additionally, Debtors will pay the monthly real estate taxes through the Chapter 13 Plan and will pay the ongoing homeowners insurance on their own through the Chapter 13 Plan.  Upon plan completion and discharge, Mr. Cooper shall release the mortgage against the real estate.

(Chapter 13 Plan at 10, Bankr. Case No. 20-30751, ECF No. 10).  The bankruptcy court confirmed Debtors' plan in September 2020.[4]  The confirmed plan provides a 0% payout to class 4 nonpriority unsecured creditors.  Consequently, as the bankruptcy court recognized, the confirmed plan "pays neither Nationstar nor the other unsecured creditors anything on account of Teresa Carman's one-half interest in the Property."  (Decision Granting Def.'s Am. Mot. for Summ. J. and Den. Pls.' Cross-Mot. for Summ. J. ("Opinion") at 3, Adv. Proc. No. 20-3027, ECF No. 28.)[5]

---

[3]The Loan Modification is hereinafter cited as " ("Loan Modification at ___")."

[4]The parties agreed that plan confirmation was subject to a modification depending on the outcome of the adversary proceeding.  (Agreed Order Resolving Objs. to Confirmation, Case No. 20-30751, ECF No. 27).

[5]The Opinion is hereinafter cited as "(Opinion at ___)."

On July 22, 2020, the Carmans filed an Adversary Complaint to Partially Avoid Mortgage ("Complaint") against Nationstar in which they asked the bankruptcy court to "enter a declaratory judgment finding that [Nationstar's] Mortgage does not encumber [] Teresa Carman's interest in the real estate." (Compl. at 5, Adv. Proc. No. 20-3027, ECF No. 1.) In support of their claim, Debtors argued that Teresa Carman signed the Mortgage solely to release her dower interest in the Property.

On January 28, 2021, Nationstar filed an amended motion for summary judgment ("Summary Judgment Motion"), arguing that Debtors could not avoid the Mortgage as to Teresa Carman's interest in the Property because she conveyed her one-half interest to the lender when she signed the Loan Modification in November 2014. On May 3, 2021, Debtors filed their response and cross-motion for summary judgment ("Cross Motion for Summary Judgment"), and Nationstar filed its reply on May 18, 2021.

On July 30, 2021, the bankruptcy court issued its Opinion and a separate order granting Nationstar's Summary Judgment Motion and denying Debtors' Cross Motion for Summary Judgment. In so doing, the bankruptcy court made several legal determinations. First, the court concluded that "the nature of the relief sought" by Debtors was "for [a] declaratory judgment, not avoidance of the lien under" 11 U.S.C. § 544. (Op. at 5.) Second, the court held that the only contractual documents relevant to the parties' intent were the Mortgage and the Loan Modification. Third, the court agreed with Debtors and held that Teresa Carman signed the Mortgage "'solely to release her dower interest' and not to encumber her interest in the Property." (*Id.* at 11.) Fourth, the court ruled that the Loan Modification was unambiguous and, therefore, "the court cannot look beyond the Loan Modification to construe it." (*Id.*) The bankruptcy court further held that the Loan Modification was "clear on its face," "amended and supplemented the Mortgage," and that Teresa Carman signed the Loan Modification "solely to evidence [her] agreement that all of [her] right, title and interest in the Property is subject and subordinate to the terms of the [Loan Modification] and the Loan Documents." (*Id.* at 13 (quoting Loan Modification at 1, 7).) Thus, "she unambiguously encumbered her one-half interest in the Property through the Loan Modification." (*Id.*) Lastly, the bankruptcy court

concluded that Debtors' allegations of possible violations of federal lending laws were irrelevant to the determination of the parties' intent in executing the Loan Modification.

> Whether Nationstar violated federal housing, or other consumer protection laws in the process of entering into the Loan Modification does not change the unambiguous meaning of the Loan Modifications' terms. If the Carmans' allegations are correct, *upon which the court is not opining*, such violations may expose Nationstar to other remedies, but it does not alter the court's analysis.

(*Id.* at 14 (emphasis added).) In the "Conclusion" section of the Opinion, the bankruptcy court denied Debtors' request to amend their complaint to add additional counts for violation of the Truth in Lending Act and other federal consumer protection statutes. The court noted that Debtors never filed a motion for leave to amend the complaint, "but, instead without citation of authority or explanation, only mention[] this alternative relief in the final sentence of the conclusion of [their] response and summary judgment cross-motion."[6] (*Id.* at 14, n.5.) As such, the court stated it had "adjudicated all the relief sought by [Debtors'] complaint[.]" (*Id.*)

On August 13, 2021, Debtors filed a Motion to Alter or Amend Judgment Pursuant to Federal Rule of Bankruptcy Procedure 9023 ("Motion to Alter or Amend"). In that motion, Debtors asked the bankruptcy court to reconsider its decision for three reasons. First, Debtors argued that an absurdity would result if the court held that the Loan Modification modified the definition of "borrower" in the original Mortgage because doing so "could expose [Nationstar] to civil liability for violation of various consumer protection statutes." (Mot. to Alter or Amend at 3, Adv. Proc. No. 20-3027, ECF No. 32.) Thus, the bankruptcy court should "consider extrinsic evidence regarding the intent of the parties," and this extrinsic evidence would clearly demonstrate "there was no intention to encumber [Teresa] Carman's one[-]half interest in the" Property. (*Id.*) Second, Debtors argued that they had previously received a Chapter 7 discharge on November 12, 2013, and the Mortgage was part of that case and was not reaffirmed. (*Id.* at 3-4.) Thus, the 2014 Loan Modification was effectively an "end run around the reaffirmation requirements of 11 U.S.C. § 524." (*Id.* at 4.) In asserting this position, Debtors acknowledged that they had not "expressly" advanced this argument in their pre-trial pleadings. (*Id.* at 3.)

---

[6]In a footnote, the bankruptcy court stated that "The Defendant did not file a motion to amend the complaint[.];" however, the document it cites is Debtors' Cross Motion for Summary Judgment. As such, the bankruptcy court's use of the word "Defendant" appears to be a typographical error.

Third, Debtors argued that the bankruptcy court had erred in denying their request for leave to amend their complaint because their request for leave to amend in their Cross Motion for Summary Judgment was equivalent to a motion to amend.

Nationstar filed an objection to the Motion to Alter or Amend on August 19, 2021.

On August 27, 2021, the bankruptcy court issued an Order Denying Plaintiffs' Motion to Alter or Amend  ("Order Denying Motion to Alter or Amend").  The court concluded that "[t]he Carmans' motion does not argue there is any newly discovered evidence, or an intervening change in the law."  (Order Den. Mot. to Alter or Amend at 3, Adv. Proc. No. 20-3027, ECF No. 34.)[7]  The bankruptcy court also concluded that "the only basis to grant the motion is legal error, or to prevent manifest injustice" and that Debtors had not demonstrated either ground.  (*Id.*)  In so doing, the court addressed each of Debtors' arguments.  First, as to Debtors' assertion that an absurdity would result from the conclusion that Teresa Carman pledged her one-half interest in the property when she signed the Loan Modification, the bankruptcy court explained:

> The Carmans mentioned the absurdity argument briefly in their response and cross-motion, stating that Nationstar would be subject to liability beyond what is in the complaint.  The Carmans specifically mention that the loan modification would violate 15 U.S.C. § 1638(f) by failing to provide certain information to Teresa as a borrower on a residential mortgage loan, and point to Plaintiff Exhibit 9 listing only Mr. Carman on loan statements.  But the Carmans appear to premise their argument on a finding that is not in the decision.  The summary judgment decision does not conclude Teresa is a borrower or an obligor on the underlying note or loan, as modified.  Instead, it concludes that Teresa pledged her one-half interest in the Property, which provided additional consideration for that loan modification.

(*Id.* at 3–4.)  Second, because the court did not conclude Teresa Carman was a "borrower," the bankruptcy court held "that the 2013 Chapter 7 discharge of Teresa's in personam liability" was irrelevant to the decision.  (*Id.* at 4–5.)  Lastly, the court held that even if it could "consider an amendment to a complaint based on a passing reference in the conclusion of a brief," Debtors "didn't show (and still cannot show) how any violation of consumer protection laws changes the result."  (*Id.* at 5.)  The court reiterated that "allegations about consumer protection laws (which

---

[7]The Order Denying Motion to Alter or Amend will hereinafter be cited as "(Order Den. Mot. to Alter or Amend at ___.)"

may involve a holder of the underlying obligation prior to Nationstar), whether meritorious or not, do not impact the court's conclusion that Teresa Carman mortgaged her one-half interest in the Property to Nationstar" when she signed the Loan Modification  (*Id.*)

On September 10, 2021, Debtors timely filed their Notice of Appeal, giving rise to the appeal now before this Panel.

## DISCUSSION

Debtors do not dispute the bankruptcy court's application of Ohio contract law to interpret the loan documents at issue, and they agree with the bankruptcy court's conclusion that Teresa Carman's undivided one-half interest in the Property was not originally subject to the Mortgage she signed in 2002 solely to release her dower interest.  They also do not challenge the bankruptcy court's conclusion that 11 U.S.C. § 544 is inapplicable to their claim for relief.

Rather, Debtors argue on appeal that the bankruptcy court incorrectly concluded that Teresa Carman pledged her interest by signing the Loan Modification.  They also assert that the bankruptcy court failed to consider extrinsic evidence beyond the Mortgage and Loan Modification, such as the Mortgage's various assignments, which slightly altered the definition and names of the "Borrower," thus illustrating the ambiguities of the terms therein.  Debtors repeat their argument that if Teresa Carman was truly a "borrower" under the loan documents, Nationstar violated federal lending laws by failing to give Teresa Carman all disclosures and communications to which she was legally entitled as a "borrower."  Debtors also reiterate their argument that the bankruptcy court's ruling creates an absurdity in contract interpretation.  Each of these arguments is addressed below.

## I.     The Bankruptcy Court Correctly Determined That the Only Relevant Documents are the Mortgage and the Loan Modification.

Debtors contend that the bankruptcy court should have considered extrinsic evidence beyond the 2002 Mortgage and 2014 Loan Modification—namely, the numerous mortgage assignments with their slightly-varying definitions of "Borrower"—to establish that the definition of "Borrower" was ambiguous and, therefore, that the circumstances regarding what interests were being pledged under the Loan Modification were unclear.  Debtors argue that "[a]

court can resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." (Appellants' Br. at 12, B.A.P. Case No. 21-8022, ECF No. 18 (citing *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 413 (Ohio 1987)).)[8]

In this regard, Debtors' own authority underscores why the bankruptcy court was not obligated to consider the mortgage assignments or any other extrinsic evidence: the court found no ambiguity in the primary loan documents. As the bankruptcy court explained, under Ohio law, a court may review mortgage documents to determine whether an ambiguity exists, but "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." (*Id.* at 9 (citing *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 34 (Ohio 2007)).) As Debtors' own authority likewise makes clear, only if an ambiguity exists within the document can a court resort to extrinsic evidence to construe the document's meaning. *Kelly*, 509 N.E.2d at 413, *cited in* Appellants' Br. at 12-13.

The bankruptcy court elaborated as to why the assignments were not relevant to the interpretation of the primary loan documents:

> The Carmans contend that the different uses of the term "borrower" in the various mortgage documents creates an ambiguity. Specifically, the Carmans reference the Note, Mortgage, the Loan Modification, and five assignments of the Mortgage (record citation omitted). The court does not find this argument persuasive.

> The contractual documents between the Carmans and Nationstar are two-fold – the Mortgage, with any riders to the Mortgage, and the Loan Modification. Therefore, the Mortgage and the Loan Modification were signed by both the Carmans and Nationstar (or its predecessor).

> While the Carmans refer to the multiple mortgage assignments to demonstrate an ambiguity as to the term "borrower," the assignments are not contractual documents between the Carmans and Nationstar. The Carmans did not sign the assignments, nor would a borrower like the Carmans typically sign the assignments. Mortgage assignments are agreements between the current holder of the mortgage and a party acquiring an interest in the mortgage and underlying note. *See Noland v. Wells Fargo Bank N.A.* (*In re Williams*), 395 B.R. 33, 46 (Bankr. S.D. Ohio 2008) ("…as the property owner, in this case the Debtors, are

---

[8]Appellants' Brief is hereinafter cited as "(Appellants' Br. at ___)."

not joining in that assignment and therefore cannot be conveying any of their own interests in the property."); *see also In re Moehring*, 485 B.R. 571, 577 (Bankr. S.D. Ohio 2013) ("[T]he assignment of the Mortgage . . . is not relevant to the enforcement of the Note against the [mortgagor]."). Therefore, the Mortgage assignments are not pertinent to determining what was intended between the Carmans and Nationstar.

(Op. at 10.)

The Carmans do not attempt to refute this analysis in their brief on appeal. Instead, they reiterate the arguments set forth in their Cross Motion for Summary Judgment. Debtors, therefore, have failed to provide any arguments or evidence to rebut the bankruptcy court's determination that the mortgage assignments, which were not signed by the Carmans and are wholly unrelated to the interests pledged under the Loan Modification, are irrelevant to the contract interpretation issue before the Panel.

Accordingly, because the assignments were irrelevant to the enforcement of the mortgage lien and the bankruptcy court found no ambiguity in the loan documents to justify its reliance on extrinsic evidence, the Panel agrees that "there is no reason […] to look beyond the four corners of this [Loan Modification] because it is clear and unambiguous that the Carmans agreed to that modification of the Mortgage." (*Id*. at 13.) When the language of the loan documents is clear and no ambiguity exists, extrinsic evidence is unwarranted. *Cincinnati Ins. Co.*, 875 N.E.2d at 34.

**II.      Teresa Carman Pledged Her Undivided One-Half Interest in the Property Through the Loan Modification.**

Although Debtors agree with the bankruptcy court's conclusion that Teresa Carman did not encumber her undivided one-half interest in the Property when she signed the Mortgage in 2002, they disagree that she voluntarily pledged her undivided one-half interest in the Property to Nationstar's mortgage lien when she signed the Loan Modification in 2014.

In their brief, Debtors largely restate the arguments from their Cross Motion for Summary Judgment regarding why the Loan Modification's language failed to encumber Teresa Carman's one-half interest in the Property. (*See* Cross Mot. for Summ. J. at 4–7, Adv. Proc. No. 20-3027, ECF No. 26; Appellants' Br. at 12–15.) Ultimately, though, Debtors have provided no

evidence or authority to overcome the bankruptcy court's interpretation of the Loan Modification's plain language or the fact that Teresa Carman willingly signed it.

The bankruptcy court cited to *Cincinnati Insurance Co.,* 875 N.E.2d 31, and other relevant authority for the proposition that courts must "look to the plain and ordinary meaning of the language used . . . unless another meaning is clearly apparent from the contents of the [contract]," and "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." (Op. at 12), citing *id.* at 34 (internal citations omitted)). The bankruptcy court additionally relied on three cases—*Foster*, *Barger*, and *Rogan*[9]—all of which are instructive in guiding this Panel's analysis:

> In *Foster*, the court examined the mortgage documents at issue including the original mortgage document as well as a rider. 448 B.R. at 920. After examining these documents, the court determined that the language of the mortgage was "unambiguous" and showed the "clear intent" that debtor husband was intended to be the sole borrower. *Id.* However, the rider contained language specifically stating that the rider "amends and supplements the [m]ortgage," similar to the Loan Modification at issue here, and the court determined that the rider altered "the definition of the term 'Borrower' to 'the undersigned'" and "[t]he 'undersigned' includes [debtor wife], who signed the document." *Id.* at 921. As a result of this analysis, the court decided that debtor wife's interest in the subject property was indeed encumbered. *Id.* at 920–22; *see also In re Barger*, 490 B.R. 744, 752 (Bankr. S.D. Ohio 2012) ("[T]he language of the Mortgages and the Riders clearly and unambiguously provide that Mrs. Barger is a 'Borrower' and is bound by the terms of Mortgages and Riders."); *Rogan v. Fifth Third Mortg. Co. (In re Rowe)*, 452 B.R. 591 (B.A.P. 6th Cir. 2011) (Bankruptcy court erred in concluding that a mortgagor's identity could not be incorporated from a rider to the mortgage).

(Op. at 12.) Despite their stark similarities and obvious relevance to the interpretation issue before the Panel, Debtors wholly fail to distinguish or otherwise address the apparent parallels in the *Foster*, *Barger*, or *Rogan* cases. Nationstar, meanwhile, cites to all three in support. (Br. of Appellee Nationstar Mortgage, LLC at 6.)

---

[9]*Rhiel v. BAC Home Loans Servicing, LP (In re Foster)*, 448 B.R. 914 (Bankr. S.D. Ohio 2011), *aff'd*, 458 B.R. 391 (B.A.P. 6th Cir. 2011); *Nelson v. Countrywide Home Loans, Inc. (In re Barger)*, 490 B.R. 744 (Bankr. S.D. Ohio 2012); *Rogan v. Fifth Third Mortg. Co. (In re Rowe)*, 452 B.R. 591 (B.A.P. 6th Cir. 2011).

This trio of cases illustrates that, assuming the language is unambiguous, a subsequent rider or modification can override the prior mortgage document to encompass a spouse's property interests.  Like the rider in *Foster*, the Loan Modification also expressly "amends and supplements . . . the Mortgage, Deed of Trust, or Security Deed[.]"  (Loan Modification at 1.)  Therefore, the Loan Modification became the determinative document regarding whether Teresa Carman pledged her one-half interest, akin to the supplemental rider in *Foster*:

> Although the language of the Mortgage is important and would be the determinative document in the absence of the Rider, the Rider is the true lynchpin of this case because it expressly states that it amends and supplements the Mortgage.  This language of the Rider is clear and is not susceptible to conflicting interpretations.

*In re Foster*, 448 B.R. at 921.  Similarly, the Loan Modification clearly allowed Teresa Carman, as the undersigned "non-borrower co-owner[] of the Property" and the "non-borrower spouse…with rights of dower/curtesy/homestead," to sign the document "to evidence [her] agreement that all of [her] right, title, and interest in the Property is subject and subordinate to the terms and conditions of this Agreement and the Loan Documents."  (Loan Modification at 7.)

Other applicable authority further reinforces the bankruptcy court's conclusion that the Loan Modification's language was sufficiently clear in conveying that even if she only signed as a non-borrowing spouse, Teresa Carman was still "signing solely to evidence [her] agreement that all of [her] right, title, and interest in the Property is subject and subordinate to the terms and conditions of this Agreement and the Loan Documents."  (*Id.*)  In *Wells Fargo Bank v. Nelson*, No. 1:09-CV-00090, 2009 U.S. Dist. LEXIS 49550 (S.D. Ohio June 10, 2009), the opposite result was reached when, unlike the present case, there were no indications in the loan documents that the non-borrower spouse was signing for any reason other than to release her dower interest:

> As the Bankruptcy Court found, the loan documents are consistent because "[i]n addition to *not* signing the Note, Nicole signed the Mortgage as a 'Non-Borrower.'  Further, in the granting clause of the Mortgage, Nicole's name is expressly followed by the qualifier 'signing to release dower.'  Further still, Nicole signed the Adjustable Rate Rider as a 'Non-Borrower'". . . . *The Appellant can point to nowhere in the loan documents that indicates Nicole Gehm is a "borrower" or signing for any reason other than to release dower*.  Therefore,

> consistent with the holdings in *Creter* and *Morgeson*, the Court finds that Nicole Gehm's release of dower did not convey a mortgage interest in her one-half interest of the property.

*Id.* at *10–11 (second emphasis added).  Here, Teresa Carman need not be defined as a "Borrower" for her interest to be pledged to the mortgage lien; she pledged her one-half interest in the Property when she signed the Loan Modification, thus providing additional consideration for the modification.

There are other cases within the Sixth Circuit in which the non-borrower spouse signed or initialed the loan documents but was found not to have pledged his or her property interest because the mortgage or note did not clearly apply to anyone beyond the defined "Borrower." *See, e.g.*, *Menninger v. Mort. Elec. Registration Sys., Inc.* (*In re Earl*), Bankr. No. 07-15692, Adv. No. 09-1097, 2010 Bankr. LEXIS 1993, at *6-7 (Bankr. S.D. Ohio July 2, 2010) (holding that the mortgage instrument did not apply to the interests of the debtor, Judith Ann Earl, because the borrower was defined in the singular as "Edward Ray Earl"; the mortgage referred only to that singular borrower; and no predicate in the language of the mortgage itself referenced the debtor, Judith Ann Earl); *see also Field v. McKinney* (*In re McKinney*), Case No. 11-11157, Adv. No. 11-1113, 2012 Bankr. LEXIS 5470, at *6 (Bankr. S.D. Ohio Nov. 20, 2012) (holding that the mortgagee's security interests did not extend to the non-"Borrower" husband, Christopher D. McKinney, who had not initialed or signed the mortgage and was merely named in the notary acknowledgement).

Here, the Loan Modification is the determinative lynchpin absent in those cases.  The Loan Modification very clearly included the property interests not just of the "Borrower," but also of any non-borrower co-owner or spouse with dower rights.  Further, Teresa Carman not only initialed all pages of the original Mortgage, but the Loan Modification had separate signature lines, one for David and one for "TERESA L. CARMAN AKA TERESA L. CARMEN," where she signed her name.  In doing so, she agreed that all of her right, title, and interest in the Property was subject to the terms and conditions of Nationstar's mortgage lien.  Any other interpretation of the Loan Modification language would undermine the plain meaning of the unambiguous terms therein.  "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."  *Cincinnati Ins. Co.*,

875 N.E.2d at 34 (citation omitted). Because the Loan Modification language is "clear and is not susceptible to conflicting interpretations," *Foster*, 448 B.R. at 921, this Panel upholds the bankruptcy court's interpretation.

### III. Any Alleged Violations of Federal Lending Laws Remain Irrelevant to the Interpretation of the Language of the Loan Modification.

In their appellate brief, Debtors again restate arguments from their Cross Motion for Summary Judgment regarding Nationstar's alleged violations of federal lending laws such as TILA and RESPA. (*See* Cross Mot. for Summ. J. at 6–9, Adv. Proc. No. 20-3027, ECF No. 26; Appellants' Br. at 14–17.) Debtors argue that the Loan Modification violates 15 U.S.C. § 1638(f)—the statute requiring that periodic statements for residential mortgage loans convey certain information to the borrower (e.g., the principal obligation amount, the loan's current interest rate, any late payment fees, etc.)—because that information was never personally provided to Teresa Carman, noting that the Nationstar loan statements listed only David Carman as the Borrower:

> If it were the intent of Chase[10] to add Teresa as a borrower, Chase and all subsequent servicers of this mortgage loan have violated 15 U.S.C. 1638(f) in not only failing to provide this information to Teresa, but directly refusing to even communicate with her and instead only recognizing David as an obligor authorized to receive communications. This was recently further bolstered in April of 2021 when Teresa attempted to contact Mr. Cooper, the current servicer, for clarification on a 1098 tax form. Teresa was told by Mr. Cooper that she was not on the loan and therefore they could not discuss the loan with her.

> Through the actions and conduct of the parties, it is clear that the parties did not intend for Teresa to be a borrower on the loan. If Defendant had actually intended for Teresa to be a borrower on the loan, the loan documents would be absolutely clear that she was a borrower, she would have received proper disclosures as required by Federal Law at the closing of the loan modification, she would have monthly statements addressed to her and Defendant would have allowed her to access the account information over the phone.

(Appellants' Br. at 17–18.)

---

[10]The Loan Modification agreement was originally prepared by JPMorgan Chase Bank before the mortgage lien was assigned to servicer Nationstar.

The primary reason that argument fails is because, as explained above, the bankruptcy court did not actually find that Teresa Carman was a "borrower" at all.  In its Order Denying Motion to Alter or Amend, the bankruptcy court clarified that it did not conclude in its Opinion that Teresa Carman was a "Borrower" on the Mortgage but simply determined that she had pledged her additional one-half interest in the Property by signing the Loan Modification:  "The summary judgment decision does not conclude Teresa is a borrower or an obligor on the underlying note or loan, as modified.  Instead, it concludes that Teresa pledged her one-half interest in the Property, which provided additional consideration for that loan modification." (Order Den. Mot. to Alter or Amend at 4.)

Whether Teresa Carman was a "Borrower" or a "non-borrower spouse" is not a question before this Panel in this appeal, and so we need not make any determination regarding that inquiry.  Additionally, the Carmans do not provide any additional support for this argument beyond what was presented to and rejected by the bankruptcy court in both the Opinion and the Order Denying Motion to Alter or Amend.  "[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) (citation omitted).  We find no error in the bankruptcy court's conclusions that Teresa Carman pledged her one-half interest in the Property by signing the Loan Modification and that any alleged violation of federal lending laws would not alter or affect the interpretation of that loan document.  Debtors' argument regarding Nationstar's potential violations is equally irrelevant to the inquiry before the Panel.

**IV.    The Bankruptcy Court's Decision Does Not Create an Absurd Result.**

Finally, the Carmans have argued that an absurdity would result if the Court were to hold that the Loan Modification modified the definition of "borrower," citing *Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978), a case in which the Ohio Supreme Court held that "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Id.* at 150, *cited in* Appellants' Br. at 16.  This argument was previously raised in both the Carmans' Cross Motion for Summary Judgment and in their

subsequent Motion to Alter or Amend. (*See* Cross Mot. Summ. J. at 8; Mot. to Alter or Amend at 3, Adv. Proc. No. 20-8032, ECF No. 32.)

In its Order Denying Motion to Alter or Amend, the bankruptcy court again addressed the Debtors' absurdity argument:

> Certainly, Ohio, like most or all jurisdictions, recognizes a narrow absurdity doctrine in its contract law. *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 150 N.E.3d 28, 32 (Ohio 2019) ("When considering the language of a particular contractual provision, [c]ommon words * * * will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement.") (citations and internal quotation marks omitted). But in this instance the court found the loan modification was unambiguous, and any violations of consumer protection laws were not relevant to that straightforward interpretation.

(Order Den. Mot. to Alter or Amend at 3.)

We agree with this conclusion. The Loan Modification's language was not ambiguous, and no absurd result is created by finding that Teresa Carman pledged her one-half interest in the Property when she signed her name on the Loan Modification. Again, the Loan Modification expressly and clearly sets forth that any signatory to the modification—whether borrower or non-borrowing spouse—was "signing solely to evidence their agreement that all of their right, title, and interest in the Property is subject and subordinate to the terms and conditions of this Agreement and the Loan Documents." (Loan Modification at 7.) When no other meaning can be clearly evidenced from the face or overall content of the Loan Modification, Teresa Carman must be held to the terms to which she signed. If anything, an absurd result would be created were this Panel to allow a co-debtor spouse to successfully argue that she never intended to pledge her interest, despite voluntarily signing and agreeing to such unambiguous terms. Giving the Loan Modification's common words their ordinary meaning, we find that no absurdity resulted from the bankruptcy court's determination that Teresa Carman pledged her one-half interest in the Property when she signed the Loan Modification.

**CONCLUSION**

For these reasons, the Panel concludes that the language in the Loan Modification signed by Teresa Carman unambiguously pledged her one-half undivided interest in the Property to the terms of Nationstar's mortgage lien. Therefore, the bankruptcy court's opinion is AFFIRMED.